484 So.2d 941 (1986)
STATE of Louisiana
v.
Julia DANIELS.
No. KA 85 0951.
Court of Appeal of Louisiana, First Circuit.
February 25, 1986.
*942 Bryan Bush, Dist. Atty., Baton Rouge, by Bill Hecker, Asst. Dist. Atty., for plaintiff-appellee.
Henry King, Baton Rouge, for defendant-appellant.
Before LOTTINGER, COLE and CRAIN, JJ.
CRAIN, Judge.
Julia Daniels was charged by grand jury indictment with cruelty to a juvenile, her seven year old son. La.R.S. 14:93. She pled not guilty. Following trial by jury she was convicted as charged. The trial court sentenced defendant to a term of ten years imprisonment at hard labor.[1]

FACTS
On January 10, 1984, the Child Protection Center received a referral from the school attended by defendant's son. Further investigation revealed that the child's teacher had observed a bruise on the boy's face and a burn on his thigh. The child stated that his mother, Julia Daniels, had burned his leg with a hot spoon and bruised his face with a belt. Pursuant to that report, Jo Earle, an investigator with the Child Protection Center, took the child to Earl K. Long Hospital where his injuries were documented. Thereafter, the boy was placed in foster care as he had a substantial history of abuse by his mother.
The child did not return to school until January 13, 1984. While in the bathroom that day, the child began to cry. His teacher then discovered an additional injury, a burn on his penis. When questioned, the child stated that his mother had burned his penis with a hot spoon after he wet his bed. Again, he was taken to Earl K. Long Hospital by the Child Protection Center investigator for documentation of his injuries and treatment.
Dr. Stephanie Cave, the treating physician on January 10, 1984, testified that the limited scope of her examination of the child on that date would not have disclosed the burn on his penis. Dr. John Palermo documented the burns to the child's penis on January 13, 1984. He hypothesized that those burns might well have been present on January 10, 1984.
Based on these physical findings and the child's statements implicating his mother, Julia Daniels was charged with the instant offense.
ASSIGNMENTS OF ERROR NUMBER ONE THROUGH FOUR:
The record reflects that, prior to commencement of trial on the merits, the trial court granted a motion by the prosecutor authorizing the taking of the child victim's testimony in a room other than the courtroom and the simultaneous telecast of the testimony by closed circuit television to the jury, in accordance with La.R.S. 15:283.
La.R.S. 15:283, enacted by Acts 1984, No. 563 § 1 provides:
A. On its own motion or on the motion of the attorney for any party, a court may order when justice so requires that the testimony of a child under fourteen years of age who may have been physically or sexually abused be taken in a room other than the courtroom and be simultaneously televised by closed circuit television to the court and jury. The only persons who may be present in the room with the child are the person or persons operating the audio-video equipment, the presiding judge, the attorneys for the state and defendant, the defendant, and any person, other than a relative of the child, whose presence is determined by the court to be necessary to the *943 welfare and well-being of the child during his testimony. Only the attorneys, or the presiding judge as authorized by law, may question the child.
B. The persons operating the equipment shall be confined to an adjacent room or behind a screen or mirror that permits them to see and hear the child during his testimony but does not permit the child to see or hear them. The court shall ensure that the child cannot see or hear the defendant unless such viewing or hearing is requested for purposes of identification. The court shall also ensure that the defendant is afforded the ability to consult with his attorney during the testimony of the child.
In the instant case, the child, the prosecuting attorney, defense counsel, the trial judge and defendant retired to a room near the courtroom during trial. The child testified as though sitting in the courtroom, responding to questions from the prosecutor and the defense counsel. The jury and the public could see and hear the child through a closed-circuit television monitor placed appropriately in the courtroom. Although defendant was shielded from visual contact with the child by means of a partition, she was able to maintain audio contact with her attorney throughout the child's testimony.
By means of assignments of error numbers one through four, defendant attacks use of this procedure under the recited facts. Defendant first argues that the trial court erred in authorizing implementation of La.R.S. 15:283, over defendant's objection, without requiring the state to produce evidence in support of its motion.
The procedure as enacted does not require an evidentiary hearing. Determination of whether to allow a child victim to testify outside the courtroom rests in the sound discretion of the trial court. We are satisfied that, under the circumstances, the procedure utilized was in the interest of justice. The record before us reflects that defendant's young son had been the victim of substantial abuse inflicted by his mother over a number of years. The effect of this abuse resulted in the child's manifesting behavorial and emotional problems, in addition to physical scars.[2]
New procedures that are fair and facilitate factfinding are allowable. Testimonial problems are being addressed in other states through various legislative innovations. For a discussion of various similar approaches see Note, 98 Harv.L.Rev. 806 (1985). See also, State v. Sheppard, 197 N.J.Super. 411, 484 A.2d 1330 (1984).
In reaching its decision, the trial court weighed the state's interest in presenting the televised testimony against possible infringements of defendant's right of confrontation. The trial court noted that the victim was only six years old when the incident occurred and seven years old at the time of trial. The trial court was of the opinion that the presence of his mother may have adverse effects on the victim, and employment of this alternative testimonial procedure would facilitate the child's being able to testify freely about the relevant events. Cognizant of possible infringement on defendant's right of confrontation, the trial court noted that full cross-examination would be protected and any conferences required between defendant and her counsel would be granted. We do not find any abuse of discretion on the part of the trial judge in his determination that use of the procedures of La.R.S. 15:283 were appropriate in this case.
By assignment of error number two, defendant argues that by granting the state's motion, the trial court abridged her Sixth Amendment right to confrontation. *944 Defendant contends that the right of confrontation requires face to face meeting in addition to the right of cross-examination. Although acknowledging that La.R.S. 15:283 is not per se unconstitutional, defendant urges that its application under the facts of this case is not constitutional. We disagree.
By enacting La.R.S. 15:283, the legislature attempted to ease the burden that the judicial system places on the child victim. The defendant retains the opportunity to fully cross-examine the witness. However, face to face encounter between the defendant and the witness is limited in that the child witness does not hear or see the defendant, who is shielded from sight behind a partition.
The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." In Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965), the federal right to confrontation was made binding on the states through the Fourteenth Amendment.
Defendant references United States v. Benfield, 593 F.2d 815 (8th Cir.1979), in support of her position that under La.R.S. 15:283 her confrontation is only partial. Benfield, however, is distinguishable. It concerned a deposition. The jury was not present to see and hear the actual testimony. The victim was an adult. The charge did not involve abuse.
La.R.S. 15:283 preserves the essential elements of confrontationthe oath, the opportunity to observe the witness' demeanor, and the right to cross-examine. These elements provide "all that the Sixth Amendment demands: `substantial compliance with the purposes behind the confrontation requirement.'" Ohio v. Roberts, 448 U.S. 56, 69, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980) (quoting California v. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970)). The defendant's right to confront the child face to face during the child's testimony is not critical to the purposes of cross-examination. As long as the defendant can hear the child's testimony and can confer with her attorney, the essential safeguards of cross-examination are preserved. Admittedly, the United States Supreme Court has used the words "face to face" to describe the guarantee of the confrontation clause. Snyder v. Massachusetts, 291 U.S. 97, 106, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934); Mattox v. United States, 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409 (1895). However, this language supports the right of cross-examination rather than of physical confrontation per se and the court's choice of words may have resulted from its inability to foresee technological developments permitting cross-examination without physical presence. See Note, 98 Harv.L.Rev. 806, 823 (1985). The Constitution mandates confrontation, not intimidation. In the child-victim case where all elements of confrontation are preserved except the ability of the witness to see the defendant and the jury, the constitutional mandate is satisfied. This is especially so where, as here, the defendant is the parent of the child. There is no constitutional infirmity in the application of La.R.S. 15:283 in this case.
La.R.S. 15:283 authorizes the presence in the videotaping room of "any person, other than a relative of the child, whose presence is determined by the court to be necessary to the welfare and well-being of the child during his testimony." Here, the child's foster care worker was present during his testimony. By means of assignment of error number three, defendant contends that allowing the social worker to remain during the child witness' testimony resulted in an unlawful application of that provision by the trial court. Having viewed the video taped testimony of the child, introduced into the record, we believe that the trial court's decision, which allowed the social worker to remain, did not constitute an abuse of its discretion.
During the predicate to determine the child's competence to testify, conducted in accordance with La.R.S. 15:469, the social worker was present. The child was seated at one end of a couch and the social worker *945 at the other end. The child manifested some hyperactivity but eventually focused his attention on the questions directed to him. The child was in an unfamiliar setting. The subtle effects of the social worker's presence on his well being and ability to concentrate are difficult to evaluate objectively. However, in view of the child's behavorial history, his composure may well have been buttressed by her presence.
Having had the benefit of viewing the child during the predicate, the trial court allowed the social worker to remain during the child's testimony, which was simultaneously presented to the jury via a closed-circuit television monitor. Although the jury was told that the social worker was present in the taping room, her impact was minimal since the jury's view of her was obstructed. Moreover, there is no indication that the social worker's presence prejudiced defendant. The social worker neither interacted with nor communicated in any way with the child during his testimony.
Finally, by assignment of error number four, defendant urges that the cumulative effect of this innovative testimonial process resulted in a denial of due process.
To the contrary, this trial technique serves as the functional equivalent of in-court testimony. The process employed did not significantly affect the flow of information to the jury. It did not confer any advantage on the state which would affect fundamental fairness. Scrutiny under the due process clause of the Fourteenth Amendment is not warranted.
Great harm befalls the victims of child abuse. Children who are prevailed upon to testify may be further damaged by their traumatic role in the court proceedings. In enacting and implementing La.R.S. 15:283, defendant's rights have been carefully weighed against society's interests in protecting the welfare of children.
These assignments of error are without merit.
ASSIGNMENT OF ERROR NUMBER FIVE:
The record reflects that defendant was sentenced by the trial court to serve ten years at hard labor, the maximum possible term of imprisonment under the statute. By means of this assignment, defendant urges that the sentence imposed constituted cruel, unusual and excessive punishment.
In support of this contention, defendant relies on two factors in mitigation: (1) the instant offense was defendant's first felony conviction; and (2) the degree of harm alleged to have been caused by defendant was minor and disproportionate to the sentence.
The record reflects that the trial court carefully particularized the sentence considering mitigating and aggravating factors as set forth in La.C.Cr.P. art. 894.1. In sentencing defendant, the trial court found all aggravating factors set forth in La.C.Cr.P. art. 894.1 overwhelmingly present. It found that defendant had caused serious harm to the victim, a small child. It also found the conduct of defendant was the result of circumstances likely to recur and that any lesser sentence would deprecate the seriousness of the crime.
Admittedly, the instant conviction constitutes defendant's first felony conviction. However, she has an extensive arrest record, beginning with a charge of cruelty to a juvenile, the victim here, as early as 1981. Defendant has failed to cooperate with previously imposed supervision by the Child Protection Center or to follow through with treatment of her own substance abuse. Defendant has no substantial work history and presents a high risk for further abuse. All five of defendant's children are in foster care, and defendant expressed no desire to have custody returned to her. She and her husband, the father of her four youngest children, are in the process of dissolving their marriage. Defendant showed no remorse for her action and denied abusing any of her children. Defendant, by her brief, would have us measure the harm done the victim by *946 abstractly considering the physical dimensions of the thermal burns inflicted to the child's penis. However, the Presentence Investigatory Report, carefully considered by the trial court, reveals that the victim has serious behavorial and emotional problems which experts, who have evaluated the child, opine are associated with the abuse he has received. Thus, the physical scars do not constitute an accurate gauge of the harm done to this victim.
In light of the circumstances, this sentence is neither grossly disproportionate to the crime nor a needless imposition of pain and suffering. It is not excessive and is within the discretion of the trial court.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] The record does not reflect that defendant was arraigned. Any irregularity was waived, however, when defendant proceeded to trial without objecting thereto. La.C.Cr.P. art. 555.
[2] The record as a whole supports the action of the trial court since it reflects prior abuse and psychological difficulties of this child as a result of the abuse. Even though La.R.S. 15:283 does not specifically require a hearing prior to its application, a record that does not reflect circumstances other than the age of the child and the charge involved, may not support the use of this statute. Consequently, the trial court should carefully weigh the reasons for applying La.R.S. 15:283, and to avoid abuse of discretion, those reasons and the factual basis therefor should appear in the record.