598 So.2d 407 (1992)
STATE of Louisiana
v.
Dana ROBINSON.
No. 91-KA-883.
Court of Appeal of Louisiana, Fifth Circuit.
March 31, 1992.
*409 Thomas Kliebert, Jr., Asst. Dist. Atty., Gramercy, for plaintiff-appellee.
Michael J. Poirrier, Pierre Part, for defendant-appellant.
Before GAUDIN, DUFRESNE and WICKER, JJ.
DUFRESNE, Judge.
The defendant, Dana Robinson, was charged by grand jury indictment with second degree murder in violation of LSA-R.S. 14:30.1. The defendant pled not guilty and was found guilty as charged by a unanimous jury verdict. After denial of the defendant's motion for post verdict judgment of acquittal or a new trial, the court sentenced him to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. This appeal followed and the defendant has alleged five assignments of error:
1. The trial court erred when it denied defendant's Motion for Post Verdict Judgment of Acquittal and/or New Trial.
2. The trial court erred when it denied defense counsel's Motion for Mistrial after sustaining the objection to the prejudicial comments of the State, during opening argument.
3. The trial court erred when it overruled defense counsel's objection to improper cross-examination.
4. The trial court erred when it failed to suppress photographic evidence offered by the State.
5. The trial court erred when it overruled defendant's objection to hearsay testimony.

FACTS
On the night of December 14, 1990, the defendant and Reginald Shivers entered the Hill Top Inn, a bar located in Convent, Louisiana, at which time a witness heard Shivers apologize to the defendant. Subsequently, "a couple of guys" began beating Shivers eventually sending him to the floor. While he was on the floor, the two men continued their attack by kicking him and hitting him with a pool stick. Shortly thereafter, the defendant, who was holding a gun, emerged from the crowd and fatally shot Shivers at close range in the back while he remained on the floor. The defendant then fled the scene exiting the bar through the back door.
The police arrived a short time after the shooting in response to a complaint. During their investigation they were informed that the weapon was in a nearby graveyard. After searching that area the officers found the weapon.
*410 The autopsy performed on the victim revealed that the cause of death was the gunshot wound that entered the left lower back and traveled upwards penetrating the spleen, left lung and heart. Additional injuries sustained by the victim were a severe injury to his mouth which split his lip, dislodged a tooth, broke other lower teeth and fractured his jaw, numerous injuries to his scalp and bruises to his chest, shoulder and elbow.

ASSIGNMENT OF ERROR NO. 1
The defendant contends that the trial court erred in denying his motion for post verdict judgment of acquittal or, alternatively for a new trial in that the evidence does not reasonably support the verdict of second degree murder. Specifically, the defendant argues that he established by a preponderance of evidence the presence of the mitigating factors of "sudden passion" and "heat of blood" and therefore the second degree murder verdict is inappropriate.
In evaluating the sufficiency of the evidence, the standard to be used by the appellate court is whether viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt of every element of the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Mussall, 523 So.2d 1305 (La.1988); State v. DiLosa, 529 So.2d 14 (La.App. 5th Cir.1988), writ denied, 538 So.2d 1010 (La.1989).
The defendant was charged with and convicted of second degree murder in violation of LSA-R.S. 14:30.1. The pertinent part of the statute provides:
A. Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm[.]
Accordingly, the State must show that the defendant 1) killed the victim; and 2) that the defendant had the specific intent to kill or to inflict great bodily harm. State v. Gibson, 529 So.2d 1347 (La.App. 5th Cir.1988), writ denied, 536 So.2d 1212 (La.1989).
At trial the State presented testimony from two witnesses who testified that the defendant shot the victim and R. McGarry, an expert in the field of forensic pathology, testified that the victim died of the gunshot wound. Discharging a firearm aimed directly at the victim is indicative of intent to kill or inflict great bodily harm. State v. Maxey, 527 So.2d 551 (La. App. 3rd Cir.1988), writ denied, 541 So.2d 868 (La.1989). Consequently, the State presented sufficient evidence to show that the defendant killed the victim.
However, a homicide committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of self-control and cool reflection is manslaughter. LSA-R.S. 14:31. The presence of "sudden passion" or "heat of blood" distinguishes manslaughter from murder. State v. Lombard, 486 So.2d 106 (La.1986), appeal after remand, 501 So.2d 889 (La.App. 5th Cir. 1987). "Sudden passion" and "heat of blood" are not elements of the offense of manslaughter; rather, they are mitigatory factors in the nature of a defense which exhibit a degree of culpability less than that present when the homicide is committed without them. State v. Lombard, supra. When the preponderance of the evidence shows that a homicide was committed in "sudden passion" or "heat of blood" which would have deprived an average person of his self control and cool reflection, a jury errs in rendering a verdict of second degree murder. State ex rel Lawrence v. Smith, 571 So.2d 133 (La.1990), appeal after remand, 584 So.2d 334 (La.App. 3rd Cir.1991).
In reviewing a claim that defendant proved the presence of the mitigating factors by a preponderance of the evidence, the appellate court must determine whether a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found that the mitigatory factors were not established by a preponderance of the evidence. State v. Lombard, supra.
*411 The defendant argues that mitigatory factors were established by testimony of the defense witnesses. Specifically, Tharyl Landry, Rhonda Edler and Jason Jones testified that the victim and the defendant argued and fought prior to the shooting and that the defendant argued and fought prior to the shooting and that the defendant was provoked to anger by an attack with a pool stick.
However, the above evidence was contradicted by the State's case.
Ivory Williams testified that he observed "several subjects" hitting the victim. Subsequently, the defendant walked "over towards where the fight was, and he rushed down with a revolver and just shot the gun and ran out the door." Although he "couldn't really see" the victim because of the crowd that had gathered around him "he had to be on his knees with his head down toward the floor" when he was shot.
Preston Honor testified that he observed "two guys fighting" the victim. Eventually, the victim fell to the floor, but the two continued beating him. Shortly thereafter, the defendant "came through the crowd and shot him and ran out the back door."
Dr. McGarry testified that the angle of the bullet wound entry indicated that the victim was horizontal, "probably on the floor, on the ground rolled a little bit to the left shoulder-up position", when he was shot.
In rebuttal, James Short testified that the victim was on the floor when he was shot. The defendant was not involved in the attack on the victim and he heard the victim apologize to the defendant when they entered the bar.
In the instant case the defendant did not prove that he committed the offense in "sudden passion" or "heat of blood" caused by provocation which would have deprived an average person of his self-control and cool reflection. The physical evidence established that the victim was shot in the back while he was on the floor thereby refuting the defendant's claim that he shot the victim just as he attempted to strike the defendant with a pool stick. Furthermore, there was testimony that the victim apologized to the defendant after they entered the bar and that immediately prior to the shooting the victim was being attacked by two men. The trier of fact appears to have found that testimony credible. The credibility of witnesses is a matter within the sound discretion of the trier of fact and such factual determinations will not be disturbed on review unless clearly contrary to the evidence. State v. Richardson, 425 So.2d 1228 (La.1983); State v. Butler, 450 So.2d 764 (La.App. 5th Cir. 1984).
Considering the above it can be concluded that, viewing the evidence in light most favorable to the prosecution, a rational trier of fact could properly have concluded that the mitigatory factors were not established by a preponderance of the evidence. Accordingly, the trial court did not err in denying defendant's post verdict judgment of acquittal.
The assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 2
The defendant contends that the trial court erred in refusing to grant the defendant a mistrial as a result of a prejudicial remark made by the prosecutor in his opening statement.
During the opening statement the following occurred:
MR. KLIEBERT; [Prosecutor]
... when we get through with the testimony, I'm going to ask you to do your duty, to do your duty as a citizen and find the defendant, Dana Robinson, guilty of second degree murder. So that SheltyShelty is Reggie's one-year old daughter. So she can grow up to know that there's justice in the world.
Thank you.
MS. STEIB; [Defense Counsel]
Your Honor, at this I'd like to make an objection that that is prejudicial and a grounds for a mistrial.
COURT:
Objection is sustained. The jurors are instructed to disregard the reference to the daughter of the victim.
*412 MS. STEIB:
And your Honor, at this time, I'm saying, according to Article 770, that these prejudicial remarks, I would tend to think a basis for a mistrial in this case.
THE COURT:
Motion is denied.
The scope of the opening statement is defined in LSA-C.Cr.P. art. 766 which provides:
The opening statement of the state shall explain the nature of the charge, and set forth, in general terms, the nature of the evidence by which the state expects to prove the charge.
Although the above article does not provide a sanction if the prosecutor's statement exceeds permissible grounds, LSA-C.Cr.P. arts. 770 and 771 do provide remedies for improper statements made by the prosecutor. LSA-C.Cr.P. art. 770 provides:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
(1) Race, religion, color or national origin, if the remark or comment is not material and relevant and might create prejudice against the defendant in the mind of the jury;
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
(3) The failure of the defendant to testify in his own defense; or
(4) The refusal of the judge to direct a verdict.
An admonition to the jury to disregard the remark comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.
LSA-C.Cr.P. art. 771 provides:
In the following cases, upon the request of defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during trial, or in trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial. The remark made by the prosecutor did not fall within the scope of art. 770; therefore, the granting of a mistrial was discretionary. A mistrial is a drastic remedy and, except in instances in which the mistrial is mandatory, is warranted only when a trial error results in substantial prejudice to the defendant, depriving him of a reasonable expectation of a fair trial. State v. Sepulvado, 359 So.2d 137 (La. 1978), appeal after remand, 367 So.2d 762 (La.1979).
In the instant case the trial court sustained defense counsel's objection and instructed the jury to disregard the prosecutor's remark regarding the victim's daughter. Any prejudice which may have resulted from the remark was cured by that instruction; therefore, the trial judge did not err in his refusal to grant a mistrial.
The assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 3
The defendant contends that the prosecutor's inference of gang membership by the defendant with Jason Jones, Marelle LeBlanc and Chris LeBlanc during his closing argument constituted an impermissible reference to other criminal activity considering *413 the association between gang membership and criminal activity and Jones' testimony regarding his prior convictions.
With the jury retired from the courtroom the prosecutor questioned Jason Jones about a "tear drop tatoo" that he, Marelle LeBlanc and the defendant had under their eyes, inferring they were part of a little gang. Defense counsel had objected to this inference.
The court ruled the prosecutor could pursue the line of questioning, but to characterize the three as an organization or group, rather than a gang.
When the prosecutor continued his cross examination he elicited testimony from Jones that both the defendant and Marelle LeBlanc had the same tear drop tatoo and that Jones had been convicted of public intimidation and disturbing the peace.
Subsequently, during his closing argument the prosecutor stated the following in order to refute any self-defense claim:
You have absolutely no valid testimony of any kind indicating that Dana Robinson was in any way threatened by Reggie Shivers.
The only thing you had was Jason Jones. Jason Jones, the guy with the tear drop, the guy with the same tear drop that's on the face of Dana Robinson, the guys that grew up together, the guys that are friends together, that hang out together.
* * * * * *
Defense counsel noted her objection to the statement, but at the conclusion of the closing argument did not object nor move for a mistrial.
The prosecutor's remarks did not constitute an impermissible reference to other criminal activity. The prosecutor was impeaching the credibility of the defense witness Jason Jones, by indicating that the defendant and Jones were close friends who even had the same tatoo and there was no indication that the two men had been involved in other criminal activity together.
The assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 4
The defendant contends that the trial court erred when it admitted into evidence three photographs depicting the victim's extensive and severe facial injuries since the photographs were not relevant to the charged offense and were introduced solely to inflame the jury. The photographs to which the defendant objected are numbered 26, 50 and 54. Photograph 26 which was taken at the autopsy shows a wound to the victim's lip. Photograph 50 was taken after the police found the body and shows the victim's head and shoulders as he lay on the floor at the scene prior to the examination by the coroner. Finally, photograph 54 shows the victim's head and shoulder as he lay on the floor at the scene while being examined by the coroner.
In State v. Moore, 498 So.2d 82, 84 (La. App. 5th Cir.1986), this court set forth the standard used to determine the admissibility of allegedly gruesome photographs as follows:
The test used in determining admissibility of photographs is whether the probative value of an allegedly gruesome photograph outweighs its prejudicial effect upon the jury, State v. Dean, 487 So.2d 709 (La.App. 5th Cir.1986). The evidence, of course, must also be relevant for some purpose, and a balance must be struck between the evidentiary value of the photograph and its tendency to overwhelm reason and to associate the accused with the atrocity without sufficient evidence, State v. Sterling, 377 So.2d 58 (La.1979). Generally, photographs of the body of the deceased victim have been held relevant to prove the death, to corroborate other evidence of the cause of death, to establish the location, severity and number of wounds, and to prove the identity of the victim, State v. Dean, supra, State v. Bennett, 454 So.2d 1165 (La.App. 1st Cir.1984).
The trial court's admission of an allegedly gruesome photograph will be overturned on appeal only if the prejudicial effect clearly outweighs the probative value. No error will be found unless the *414 photographs are so gruesome so as to overwhelm the jurors' reason and lead them to convict the defendant without sufficient other evidence. State v. Eaton, 524 So.2d 1194 (La.1988), cert. denied, Eaton v. Louisiana, 488 U.S. 1019, 109 S.Ct. 818, 102 L.Ed.2d 807, rehearing denied, 489 U.S. 1061, 109 S.Ct. 1332, 103 L.Ed.2d 600 (1989).
In the instant case the photographs were relevant to establish the nature and extent of the wounds sustained by the victim at the time of the shooting. The relevance and the probativity of the photographs outweighed any possible prejudicial effect they may have created in the jury's mind. Furthermore, although grim, the photographs are not so gruesome as to overwhelm the jurors' reason and lead them to convict the defendant without sufficient independent evidence.
The assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 5
The defendant contends that the trial court erred in admitting the hearsay testimony of Eva Walker in that the testimony did not fall within the exception to the hearsay rule set forth in LSA-C.E. art. 801(D)(4).
At trial during the direct examination of the State's witness Eva Walker, the following line of questioning occurred subsequent to the trial court's overruling of defense counsel's hearsay objection:
Q. Again, on the night of December 14th, 1990, [the night of the shooting] did Marelle LeBlanc make a statement to you as to what happened at the Hilltop Inn?
A. Yes.
Q. And what was that statement, Eva?
A. He told me that Dana had shot somebody.
Q. He said that?
A. Dana had shot somebody.
Q. He said that Dana had shot somebody? When he said, "Dana", did you know who he was talking about?
A. Yes.
Q. Dana who?
A. Robinson.
Q. You have to speak up.
A. Robinson.
Q. And that's the individual who you identified in court, right?
A. Yes.
Q. What else did he tell you?
A. [No response.]
Q. Did youdid Dana say anything to you that night?
A. No.
Q. How did he appear to you when he came to your home?
A. Nervous.
Q. He appeared nervous? Did you notice anything unusual about Dana other than that he was nervous?
A. No.
LSA-C.E. art. 801(D)(4) provides:
D. Statements which are not hearsay. A statement is not hearsay if:
* * * * * *
(4) Things said or done. The statements are events speaking for themselves under the immediate pressure of the occurrence, through the instructive, impulsive and spontaneous words and acts of the participants, and not the words of the participants when narrating the events, and which are necessary incidents of the criminal act, or immediate concomitant of it, or form in conjunction with it one continuous transaction.
Here, the statement was made at the Walker home on the night of the shooting. After observing the shooting, Marelle LeBlanc accompanied the defendant to the home. At that time he had a blood stain on his shirt and the defendant still appeared nervous from having shot the victim; thus, the interval between the shooting and the statement was not of a sufficient duration. Therefore, the statement relating that the defendant shot someone was made under the immediate pressure of the occurrence and was part of one continuous transaction. As such the statement was admissible as an exception to the hearsay rule. See State v. Washington, 444 So.2d 320 (La. App. 1st Cir.1983), writ denied, 445 So.2d 450 (La.1984) where the court held that a *415 statement which defendant's accomplice made to two officers in response to their question about two hours after the robbery was part of a continuous chain of events following the crime.
Even assuming that the statement was erroneously admitted into evidence, its admission did not contribute to the verdict and was harmless beyond a reasonable doubt considering that the defense did not deny that the defendant shot the victim but instead claimed that the shot was fired in heat of blood or self-defense.
The assignment of error is without merit.

PATENT ERROR
A review of the record reveals the following error.
Although the transcript reflects that the defendant was given credit for time served the minute entry and commitment fail to reflect such. It is well established that when there is a discrepancy between the minutes and the transcript, the transcript must prevail. State v. Lynch, 441 So.2d 732 (La.1983). Thus it is ordered that the minute entry and commitment be amended to reflect such a credit for time served.
For the foregoing reasons, we affirm Robinson's conviction. We amend the sentence to allow credit for time served.
AMENDED AND AS AMENDED, AFFIRMED.