668 So.2d 1260 (1996)
STATE of Louisiana,
v.
Vincent SMITH.
No. 95-KA-734.
Court of Appeal of Louisiana, Fifth Circuit.
January 30, 1996.
*1261 John M. Mamoulides, District Attorney, Terry M. Boudreaux, Assistant District Attorney, Gretna, for Plaintiff/Appellee.
Linda Davis-Short, 24th Judicial District, Indigent Defender Board, Gretna, for Defendant/Appellant.
Before GOTHARD and CANNELLA, JJ., and REMY CHIASSON, J. Pro Tem.
GOTHARD, Judge.
Defendant, Vincent Smith, appeals his conviction and sentence for second degree murder. We affirm.
Smith was indicted by a Jefferson Parish Grand Jury on December 8, 1994 for second degree murder in violation of LSA-R.S. 14:30.1. He pled not guilty at his arraignment, and was subsequently tried by a jury on May 23, 24 and 25, 1995. At the conclusion of the trial, the jury found the defendant *1262 guilty as charged. On June 25, 1995, the court sentenced Smith to life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence, giving credit for time served. Defendant filed this appeal.[1]
On November 27, 1994, at about 4:30 a.m., the victim, Johnnie Mae Payne, and a friend, Mattie Lang, were returning home from an evening out. As they arrived at the apartment complex at 7525 Airline Highway, defendant, the victim's live-in boyfriend, was sitting outside. An argument began between defendant and the victim which continued after the two went inside the victim's apartment. The argument became loud enough to awakened Ms. Payne's children. During the course of the argument, Smith shot Payne.
One of the victim's children, Quinton Payne, testified that he heard his mother telling defendant to get out of the house, to which defendant replied "I'll kill you." Quinton further testified that after his mother replied "shoot me then," he heard gunshots. Quinton looked out of his bedroom and saw his mother laying motionless on the floor. He then observed defendant bend over the victim and shoot her in the head.
After shooting the victim, the defendant went from the back part of the house to the front room. He pointed a gun at Shadrika Payne, the victim's daughter, and demanded the keys to the victim's pick-up truck. Smith threatened to shoot Shadrika also if she did not comply. Believing that her life was in danger, Shadrika gave defendant the keys. Defendant then opened the door and left the scene in the victim's white Ford pick-up truck.
After defendant left, the police were called to the scene. A broadcast giving a description of the suspect vehicle and naming the perpetrator as Vincent Smith went out over police radio. Deputy Henry Bonds, who was working a paid detail in the area at the time, observed the suspect vehicle on Airline Highway. After verifying the race of the subject, Officer Bonds stopped the vehicle at the intersection of Hollygrove and Airline Highway. Deputy Edward Ducos of the Jefferson Parish Sheriff's Office, who was also working a paid detail, arrived on the scene.
When the driver identified himself as Vincent Smith, Officer Ducos advised him of his constitutional rights and inquired as to what happened. Defendant advised the officer that his girlfriend pulled a gun on him, that she fired a shot at him, that he got in a struggle with her to gain control of the gun, during which she was shot. The officer then inquired as to the whereabouts of the weapon, to which defendant replied that he threw it behind the seat. Officer Ducos checked behind the seat to verify the location of the gun, but did not remove it until the crime lab arrived to process the scene.
Defendant was thereafter transported to the detective bureau. After being fully advised of his rights and executing a waiver of rights form, defendant gave a taped statement to Detective Dennis Thornton. In defendant's statement, he claimed that he and the victim were arguing and that she told him to leave the apartment. As Smith was packing his clothes, Payne fired a shot. A struggle over the gun ensued during which it fired accidentally. Defendant then tripped over the victim, causing the gun to go off again.
In addition to taking a statement from defendant, Detective Thornton spoke to other witnesses and gathered evidence about what had occurred. Based on the information received, Detective Thornton arrested defendant for the murder of Johnnie Mae Payne.
In his first assignment of error defendant challenges the sufficiency of the evidence used to convict him of second degree murder, contending that the evidence warranted a verdict of manslaughter.
In State v. Burrow, 565 So.2d 972, 976 (La.App. 5 Cir.1990), writ denied, 572 So.2d 60 (La.1991), the court set forth the standard for testing the sufficiency of the evidence as follows:

*1263 The constitutional standard for testing the sufficiency of the evidence, enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. State v. Rosiere, 488 So.2d 965 (La.1986); State v. Davis, 540 So.2d 600 ([La.App.] 5th Cir.1989). When circumstantial evidence is used to prove the commission of the offense, LSA-R.S. 15:438 mandates that, "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." The requirement of LSA-R.S. 15:438 does not establish a standard separate from the Jackson standard, but rather provides a helpful methodology for determining the existence of reasonable doubt. State v. Captville, 448 So.2d 676 (La.1984); State v. DiLosa, 529 So.2d 14 ([La.App.] 5th Cir. 1988), writ denied, 538 So.2d 1010 (La. 1989). Ultimately, all evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. State v. Porretto, 468 So.2d 1142 (La.1985), dissenting opinion, 475 So.2d 314 (La.1985).
The defendant was charged with and convicted of one count of second degree murder in violation of LSA-R.S. 14:30.1, which reads in pertinent part as follows:
A. Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm[.]
Accordingly, the state must show that the defendant killed the victim; and that the defendant had the specific intent to kill or to inflict great bodily harm. State v. Gibson, 529 So.2d 1347 (La.App. 5 Cir.1988), writ denied, 536 So.2d 1212 (La.1989).
In the present case, there was testimony that defendant shot the victim. Specifically, Quinton Payne testified that as the victim lay motionless on the floor, defendant approached with the gun, bent over her, and shot her in the head. In addition, there was expert testimony by Dr. Fraser MacKenzie of the Jefferson Parish Coroner's Office that the victim died of gunshot wounds, and that the hypothetical scenario that this incident resulted in an accidental fashion because of two people struggling over the gun, would be inconsistent with his findings. Ms. Louise Walzer, an expert in firearms examination who tested the weapon, testified that the gun discharged only when the trigger was pulled and did not go off accidentally.
We find the state presented sufficient evidence to show that defendant killed the victim and that defendant had the specific intent to kill or to inflict great bodily harm.
However, a homicide committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of self-control and cool reflection is manslaughter. LSA-R.S. 14:31. The presence of "sudden passion" or "heat of blood" distinguishes manslaughter from murder. State v. Thorne, 93-859 (La.App. 5 Cir. 2/23/94), 633 So.2d 773; State v. Robinson, 598 So.2d 407 (La.App. 5 Cir.1992). "Sudden passion" and "heat of blood" are not elements of the offense of manslaughter; rather, they are mitigatory factors in the nature of a defense which exhibit a degree of culpability less than that present when the homicide is committed without them. State v. Thorne, supra. When the preponderance of the evidence shows that a homicide was committed in "sudden passion" or "heat of blood" which would have deprived an average person of his self control and cool reflections, a jury errs in rendering a verdict of second degree murder. State ex rel. Lawrence v. Smith, 571 So.2d 133, 136 (La.1990), appeal after remand, 584 So.2d 334 (La.App. 3 Cir. 1991), writ denied, 586 So.2d 566 (La.1991); State v. Robinson, supra.
In reviewing a claim that defendant proved the presence of the mitigating factors by a preponderance of the evidence, the appellate court must determine whether a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found that the mitigatory factors were not established by a preponderance of *1264 the evidence. State v. Thorne, supra; State v. Robinson, supra.
Defendant argues that the evidence showed by a preponderance of the evidence that the mitigating factors of heat of blood and sudden passion were present. Defendant points to the facts that he and the victim were involved in a heated argument, the victim arrived sitting next to another man in the back seat, and that there was a knife found in the bedroom where the shooting occurred.
However, the evidence presented does not support defendant's argument that heat of blood and sudden passion were present. While the testimony clearly established that defendant and the victim were in a heated argument, defendant himself indicated that he and the victim argued often, and routinely separated only to reconcile shortly afterward. Moreover, while a knife was found in the bedroom, there was no testimony indicating that the victim threatened defendant with the knife. Further, the testimony suggests that at one point the argument calmed down but then escalated again. Thus, viewing the evidence in the light most favorable to the prosecution, it appears that the jury could have reasonably found that the mitigatory factors were not established by a preponderance of the evidence. See State v. Copeland, 93-544 (La.App. 5 Cir. 1/25/94), 631 So.2d 1223, writ denied, 94-0417 (La. 5/20/94), 637 So.2d 477. We find this assignment to be without merit.
In his second assignment of error, defendant asserts the trial court erred in denying a defense motion for mistrial. At trial, defendant testified in his own behalf and on direct examination admitted to several prior convictions: simple robbery, aggravated battery, possession of cocaine, car burglary, and assault and battery. During the cross-examination of defendant by one of the prosecuting attorneys, the following exchange took place:
Q. And you said, as you were waiting for her to come home, you felt hurt and used, right?
A. Um-hum (affirmative response).
Q. All right. Let me ask you, Mr. Smith, on April 22nd, 1985, do you think that Byron Alexander felt hurt and used when you robbed him and pistol
MS. SCHLOSSER:
Uh, objection
MR. OLINDE:
whipped him
MS. SCHLOSSER:
Your Honor.
MR. OLINDE:
for forty dollars?
MS. SCHLOSSER:
Objection.
THE COURT:
Sustained.
MR. OLINDE:
That's part of a conviction, Judge
MS. SCHLOSSER:
Objection!
THE COURT:
Sustained.
MR. OLINDE:
Were you not convicted
THE COURT:
It is
MS. SCHLOSSER:
Mistrial!
THE COURT:
sustained!
THE COURT:
It is sustained, Mr. Olinde.
MR. OLINDE:
I can't ask him about the conviction, Judge?
MS. SCHLOSSER:
Mistrial!
THE COURT:
Come on up, counsel.
(The following conversation occurred at the Bench, out of earshot of the jury.)
THE COURT:
No, you cannot. He admitted it. You cannot go into the facts, once they admit it.
MS. SCHLOSSER:
Mistrial.
MR. OLINDE:
I'm not asking
THE COURT:
I'm denying
MR. WILSON:
It's not a mistrial.
THE COURT:
a mistrial.

*1265 MR. WILSON:
It's the Bill of Information.
THE COURT:
I'm notjust lay off of it. He's admitted it. You can't go any further into it, and I'm not granting a mistrial.
MS. SCHLOSSER:
Okay. Let me make this request, then.
THE COURT:
Wait, counsel.
MS. SCHLOSSER:
I just want the record to reflect that I requested a mistrial over this.
THE COURT:
Okay.
MS. SCHLOSSER:
Okay
THE COURT:
And I denied it.
After the trial judge denied the motion for mistrial, defense counsel requested the judge to instruct the jury that convictions are to be used for credibility only. When the judge thereafter charged the jury, she told them that: "Prior convictions may be used only to consider the credibility of a witness, and for no other purpose."
Defendant now complains that the trial judge erred in denying his motion for mistrial. Defendant specifically contends that inasmuch as defendant admitted his conviction, the reference to the facts of that conviction was inadmissible and highly prejudicial. On the other hand, the state contends that defendant's argument is without merit as the trial judge maintained the objection and prevented the prosecution from delving further into the simple robbery by pistol whipping.
Defendant relies on LSA-C.Cr.P. art. 770 to support his argument that a mistrial is warranted. That article provides, in pertinent part, as follows:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
* * * * * *
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
* * * * * *
An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.
Pursuant to LSA-C.Cr.P. art. 770(2), the state is prohibited from referring to other crimes committed by defendant as to which evidence is not admissible. We do not find that article applicable to the instant situation because evidence of defendant's prior convictions is admissible pursuant to LSA-C.E. art. 609.1, which reads in part as follows:
A. General criminal rule. In a criminal case, every witness by testifying subjects himself to examination relative to his criminal convictions, subject to limitations set forth below.
B. Convictions. Generally, only offenses for which the witness has been convicted are admissible upon the issue of his credibility, and no inquiry is permitted into matters for which there has only been an arrest, the issuance of an arrest warrant, an indictment, a prosecution, or an acquittal.
Although actual convictions are admissible, the details of such convictions are generally not admissible as shown by LSA-C.E. art. 609.1 C which reads as follows:
C. Details of convictions. Ordinarily, only the fact of a conviction, the name of the offense, the date thereof, and the sentence imposed is admissible. However, details of the offense may become admissible to show the true nature of the offense:
(1) When the witness has denied the conviction or denied recollection thereof;
(2) When the witness has testified to exculpatory facts or circumstances surrounding the conviction; or
(3) When the probative value thereof outweighs the danger of unfair prejudice, confusion of the issues, or misleading the jury.
*1266 In the present case, defendant admitted the conviction on direct examination and therefore, the details of the offense were not admissible. When the prosecutor tried to delve into the details of one of defendant's convictions, the trial judge sustained the defense objection and did not allow the prosecutor to pursue that line of questioning. Further, we note that it was defense counsel during direct examination, who brought up the fact of defendant's conviction, which defendant admitted. Thus, we find defendant's complaint in this regard without merit.
In the third assignment defendant argues the trial court erred in denying a motion to suppress his statements.
On December 19, 1994, defendant filed a Motion to Suppress Confession alleging that the statements made to the police officers were not freely and voluntarily given but were made under the influence of fear, intimidations, threats or other duress, or because of promises or other inducements. In his motion, defendant also alleged that he "had not been advised of his rights under Miranda, or had invoked his right to remain silent or to have an attorney and this right had not been honored."
At the April 7, 1995 suppression hearing, Deputy Edward Ducos of the Jefferson Parish Sheriff's Office testified that on November 27, 1994, in the early morning hours, he was working a paid security detail at the Metairie Country Club. At approximately 4:30 a.m., he heard a police broadcast about a 1980 white Ford pickup, driven by Vincent Smith, who was wanted for a shooting that occurred at 7525 Airline Highway. Henry Bonds, who was working the detail with Officer Ducos, checked the south side of the golf course. Bonds advised headquarters that he sighted such a truck and asked for the race of the person involved in the shooting. When headquarters advised that it was a black male, Bonds notified them that he had the possible vehicle. At that point, Officer Ducos proceeded towards Officer Bonds who had stopped the vehicle at Hollygrove and Airline Highway. After the driver identified himself as Vincent Smith, Deputy Ducos advised defendant of his constitutional rights and asked him what happened. In response to the officer's inquiry, defendant stated that he went to a barroom to meet his live-in girlfriend; however, when she was not there, he returned to his apartment. The girlfriend arrived later with two other men and asked him to leave. At that time, the girlfriend pulled a gun out and shot at him. They struggled over the weapon, and he shot her. In response to the officer's question, the defendant advised him that he threw the gun behind the seat. After the officers handcuffed defendant, they moved the seat forward and observed a black steel nine millimeter pistol. The officers left the gun in that location until the crime lab arrived. Defendant was placed in the police unit and brought to the detective bureau.
Regarding the issue of whether the defendant was properly informed of his constitutional rights, Deputy Ducos testified that he read defendant his Miranda rights using the card that he carries with him. According to the officer, defendant indicated that he was a career criminal and that he understood those rights. The officer also testified that defendant waived his rights prior to making his oral statement. Deputy Ducos further testified that he did not force, threaten, coerce or intimidate defendant into making a statement, nor did the officer promise or offer defendant any inducement or reward for making the statement. According to the officer, defendant made the statement freely and voluntarily and did not appear to be intoxicated.
Detective Dennis Thornton of the Jefferson Parish Sheriff's Office testified as to his participation in the investigation. On November 27, 1994, he executed a waiver of rights form with defendant. Thornton testified that he explained the rights that were listed on the form, that defendant placed his initials next to each stated right, and that defendant indicated he understood the rights that were read to him. Subsequent to the execution of this form, defendant gave a taped statement to the officer. According to Detective Thornton, no one forced, threatened or coerced defendant into making this statement, nor did anyone offer him any promises or inducements. The detective further testified that defendant gave the statement *1267 freely and voluntarily and did not appear to be under the influence of any sort of intoxicant at the time. In addition, the officer testified that at no time did defendant state that he was hard of hearing or that he could not understand what was being explained to him.
After listening to the testimony presented, the trial judge denied the motion to suppress both statements, expressing her belief that they were freely and voluntarily given.
Defendant now contends that the statements were not freely and voluntarily given because the officers played "mind games" with him and made him feel pressured into giving a statement.
In State v. Leeming, 612 So.2d 308, 311-312 (La.App. 5 Cir.1992), writ denied, 616 So.2d 681 (La.1993), this court set forth the law regarding the admissibility of a confession as follows:
Before a confession can be introduced into evidence, the State has the burden of proving that it was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. [footnote omitted] LSA-C.Cr.P. art. 703(D); LSA-R.S. 15:451; State v. Vaccaro, 411 So.2d 415 (La.1982). It must also be established that an accused who makes a confession during a custodial interrogation was first advised of his constitutional rights as per Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and voluntarily and intelligently waived those rights. State v. Castillo, 389 So.2d 1307 (La.1980), cert. denied, 453 U.S. 922, 101 S.Ct. 3159, 69 L.Ed.2d 1004 (1981); State v. Weiland, 556 So.2d 175 (La.App. 5th Cir.1990).
* * * * * *
The issue of whether a showing of voluntariness has been made is analyzed on a case by case basis with regard to the facts and circumstances of each case. The trial judge must consider the "totality of the circumstances" in deciding whether the confession is admissible. State v. Shepherd, 449 So.2d 1120, 1123 (La.App. 5th Cir.1984). The admissibility of a confession is in the first instance a question for the trial judge. His conclusions on the credibility and weight of testimony relating to the voluntariness of a confession are entitled to great weight and will not be overturned on appeal unless they are not supported by the evidence. State v. Benoit, 440 So.2d 129 (La.1983); State v. Weiland, supra; State v. Delaune, 572 So.2d 652 (La.App. 5th Cir.1990).
In the present case it appears that the state, through the testimony of the police officers, proved that defendant's statement was freely and voluntarily given and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. The testimony at the suppression hearing that the officer read and explained to defendant his constitutional rights, and that defendant decided to waive those rights and give a statement, was undisputed. In addition, the testimony adduced at trial showed that defendant indicated he understood those rights and wished to waive them. It is also noted that defendant did not object at trial to the introduction of the waiver of rights form or the transcribed copy of the statement.
We conclude that defendant was properly advised of his rights and waived them before giving a free and voluntary statement. Accordingly, the trial judge properly denied defendant's motion to suppress. This assignment is without merit.
In his next assignment defendant argues the trial court erred in applying R.S. 15:283[2]. In the present case, the prosecutor, during the course of the trial, made a motion that Quinton Payne, a twelve-year-old witness, be allowed to testify unseen by defendant. In arguing the merits of the motion, the prosecutor asked the court to consider that the witness is a twelve-year-old child who witnessed his mother being shot in the head by the defendant. The prosecutor also informed the court that the witness entered the courtroom earlier and was so traumatized by the *1268 sight of the defendant he was unable to talk for a while. It also appears from the prosecutor's statement, that Quinton witnessed the murder of his cousin, James Darby, six months earlier. Defense counsel objected to the state's motion on the basis of the confrontation clause, arguing that the accused has a right to face his accusers.
After arguments by counsel, the judge, using LSA-R.S. 15:283 for guidance, granted the state's motion and allowed that the chair for this witness be placed next to the bench. Defendant now contends that the trial judge's ruling violated his right to confront his accusers as guaranteed under the provisions of the Sixth Amendment to the United States Constitution and the Louisiana Constitution, Art. 1, Sec. 16. Defendant also contends that the trial court erred in applying LSA-R.S. 15:283 in a situation where the child witness was not the victim of the crime and there was no proof of the necessity for the child to testify from a position other than the witness chair.
The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." In Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965), the federal right to confrontation was made binding on the states through the Fourteenth Amendment. In addition, Article I, § 16 of the Louisiana Constitution of 1974 guarantees an accused in a criminal prosecution the right to be confronted with the witnesses against him. See also LSA-R.S. 15:273 which provides, in part, that "[t]he accused shall have the right to be confronted with the witnesses against him...."
In State v. Racca, 525 So.2d 1229, 1231 (La.App. 1 Cir.1988), the court discussed the purpose behind the confrontation clause, stating as follows:
The Court set forth the purposes underlying the constitutional right of confrontation in California v. Green, 399 U.S. 149, 158, 90 S.Ct. 1930, 1935, 26 L.Ed.2d 489 (1970). Therein, the Court noted the purposes protected by that right are as follows: (1) to insure that the witness will give his statements under oath, thus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury; (2) to force the witness to submit to cross-examination, the "greatest legal engine ever invented for the discovery of truth"; (3) to permit the jury that is to decide the defendant's fate [the opportunity] to observe the demeanor of the witness making his statement, thus aiding the jury in assessing his credibility. See also State v. Kaufman, 304 So.2d 300 (La.1974), U.S. cert. denied, 429 U.S. 981, 97 S.Ct. 495, 50 L.Ed.2d 591 (1976).
In State v. Roberts, 541 So.2d 961 (La. App. 2 Cir.1989), the court stated that confrontation means a face-to-face meeting between witness and defendant. However, the court noted that this right is not absolute, but is subject to the inherent power of courts to conduct criminal proceedings in a dignified, orderly and expeditious manner.
In State v. Daniels, 484 So.2d 941, 944 (La.App. 1 Cir.1986),[3] which the state cites in its brief, the court stated the following:
La.R.S. 15:283 preserves the essential elements of confrontationthe oath, the opportunity to observe the witness' demeanor, and the right to cross-examine. These elements provide "all that the Sixth Amendment demands: `substantial compliance with the purposes behind the confrontation requirement.'" Ohio v. Roberts, 448 U.S. 56, 69, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980) (quoting California v. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970)). The defendant's right to confront the child face to face during the child's testimony is not critical to the purposes of cross-examination. As long as the defendant can hear the child's testimony and can confer with her attorney, the essential safeguards of cross-examination are preserved. Admittedly, the United States Supreme Court has used the words "face to face" to describe the guarantee of the confrontation clause. Snyder v. Massachusetts, *1269 291 U.S. 97, 106, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934); Mattox v. United States, 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409 (1895). However, this language supports the right of cross-examination rather than of physical confrontation per se and the court's choice of words may have resulted from its inability to foresee technological developments permitting cross-examination without physical presence. See Note, 98 Harv.L.Rev. 806, 823 (1985). The Constitution mandates confrontation, not intimidation. In the child-victim case where all elements of confrontation are preserved except the ability of the witness to see the defendant and the jury, the constitutional mandate is satisfied.
In the present case, there is nothing to indicate that defendant was deprived, in any way, of his right to confront his accusers. The witness was in the courtroom, but was located in such a position that he could not directly see defendant. It appears, however, that defendant had a view of the witness, heard all of his testimony and was given a right to full cross-examination. Moreover, the trial judge's comments on the record support the position that defendant was not denied his right to confrontation in any way. Particularly, on June 30, 1995, the trial judge had defendant brought to court solely to make the following comments on the record:
All right, Mr. Smith, I meant, when I sentenced you, to make a comment for the record, because I know it's going up on appeal, and I want this part to go up, too, Patty; when Quentin Payne testified, we moved him from the normal witness area in my courtroom to an area directly beside my desk and below. I want the record to reflect that, while he was not directly in front of Mr. Smith, he was able to see himMr. Smith was able to see Quentin Payne, so I don't think the right to confrontation was abridged in any way. I don't know whether that will appear in the record Quentin Payne, when asked to identify, was able to directly look to his side and see the defendant, Vincent Smith, and point at him and identify him. But I wanted to be very clear, for the record, that there was viewing between the two. Okay, that's the only reason I brought him over today. Thank you.
Given the facts of this case, we do not find merit in the defendant's argument that his constitutional rights to confrontation were violated by the actions of the trial court.
In his final assignment of error, defendant requests a review of the record for errors patent in accordance with LSA-C.Cr.P. art. 920 and State v. Oliveaux, 312 So.2d 337 (La.1975). We have conducted such a review and find no errors patent.
For the foregoing reasons, the conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] It is noted that defendant's appeal motion was filed prior to the time he was sentenced. However, the prematurity of the motion was cured by defendant's subsequent sentencing. See State v. Waldron, 482 So.2d 163 (La.App. 4th Cir.1986).
[2] LSA-R.S. 15:283 concerns testimony by victims of child abuse and allows such testimony to be taken in a room other than the courtroom.
[3] Although the court, in Daniels, was discussing LSA-R.S. 15:283, the language employed by the court is helpful in understanding an accused's right to confrontation.