CALOGERO, Justice,
dissenting.
I dissent from the majority opinion, notwithstanding that I agree that the evidence admitted at trial is sufficient to counter a Jackson v. Virginia attack, because, in my view, defendant was denied substantial confrontation rights involving two witnesses who presented the most crucial and condemning evidence against defendant.
The state’s case hinged almost entirely on the identification testimony of Mrs. Bohmfalk and the testimony of a bartender, Mr. Senac, which placed defendant with the victim on the night of the murder.
As concerns Mrs. Bohmfalk’s identification testimony, it has been uncovered, since the trial and jury verdict, that Mrs. Bohm-falk had been hypnotized prior to making her identification of defendant as the perpetrator. The defense was not, prior to trial, made aware of this hypnotic session and, as a consequence, was not able at trial, in the presence of the jury, to cross-examine Mrs. Bohmfalk concerning the hypnotic session. Nor was defense counsel able to put evidence before the jury concerning the possible unreliability of an identification made after hypnosis. In view of the fact that this witness was the backbone of the state’s case against defendant, defendant’s inability to cross-examine this witness on this key point, the reliability of her identification, reaches the level of a violation of defendant’s right to confront and meaningfully cross-examine his accusers.
Similarly, defendant was denied his right meaningfully to cross-examine Mr. Senac, the bartender who placed defendant with the victim on the night of the murder, on what may have been a key point in the trial and not just a collateral impeachment matter.
Mr. Senac did not come forward with this testimony at defendant’s first trial which resulted in an eight to four jury deadlock in favor of acquittal. Mr. Senac claims that he came forward with this evidence at this trial because he is now a Born-Again Christian. Mr. Senac testified, at the second trial, that defendant and the victim, Dr. Bohmfalk, sat together and chatted at the bar and then left together. He also testified that the defendant, as he was leaving, turned to Senac and told him to forget that the victim was there that night. This was obviously significant evidence to place before the jury.
However, when the defendant wanted to cross-examine Mr. Senac, that cross-examination was limited by sustained state objections. The defendant was attempting to show, though his cross-examination of Se-nac, as well as his presentation of two other witnesses, that in fact Senac had had a close, if not homosexual, relationship with one Paul Clark, a fact Senac had denied. This was important to defendant’s case not just as impeachment evidence, but also as substantive defense evidence. The defense espoused a theory of the case involving Senac’s lover, Paul Clark, who closely resembled the composite drawing of the perpetrator. It appears that Clark was also a jewelry dealer, and some of the victim’s jewelry had been removed from the body. (The victim left home wearing several expensive gold chains and a very expensive gold nugget Presidential Rolex watch. Only two chains were on his body when later found.) Thus, the defense was denied the opportunity to present evidence to the jury of the possibility that Senac’s testimony, which had not been presented at the first trial, might have been motivated by an attempt to protect his lover.
In a case, such as this, tried on circumstantial evidence alone, the effective denial of substantial confrontation rights involving the state’s two main witnesses, in my *315 view, necessitates a retrial of the case. For this reason I dissent from the affirm-anee of the conviction.