565 So.2d 972 (1990)
STATE of Louisiana
v.
Dorel Wayne BURROW.
No. 90-KA-118.
Court of Appeal of Louisiana, Fifth Circuit.
June 25, 1990.
*973 Harry J. Morel, Jr., Dist. Atty., Gregory C. Champagne, Asst. Dist. Atty., Hahnville, for plaintiff-appellee.
Gregory A. Miller, Norco, Randy O. Lewis, Luling, for defendant-appellant.
Before KLIEBERT, DUFRESNE and GOTHARD, JJ.
KLIEBERT, Judge.
Dorel Wayne Burrow, defendant, was convicted by a twelve member jury of the second degree murder of Ella T. Hanna, a violation of LSA-R.S. 14:30.1. Defendant was sentenced to serve life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. He appeals his conviction, alleging the evidence was not sufficient to justify the verdict; that the trial court erred in numerous evidentiary rulings; and the trial court erred in refusing to grant defense's request for a continuance.[1] For the following reasons, we affirm.

FACTS
On Saturday, May 28, 1988, at approximately 3:20 A.M., Vincent Palmero, a railroad conductor, received a call from another conductor that something was burning under the wooden trestle of the railroad bridge over the Bonnet Carre Spillway. Mr. Palmero went to the site, stopped his train above the fire, and shined a light below. He noted the item on fire was a human body and radioed for police.
The police arrived and began their investigation. Evidence from the scene was secured and the victim removed to New Orleans for an autopsy. The victim was eventually identified as Ella T. Hanna.
The autopsy report indicated 85% of the body was burned to the extent that muscle and soft tissue were charred; the front of the abdomen was completely burned away, and the pelvis and organs in the lower part of the abdomen were destroyed. Further, Dr. Gerald Liuzza, a forensic pathologist who performed the autopsy, noted a number of blows to the head which he determined caused her death. He also opined that, depending on whether an accelerant, such as gasoline, was continuously poured on the body, the degree and amount of burns sustained by the victim would have occurred in one to five hours.
Upon being informed he was wanted for questioning, defendant called the St. Charles Parish Sheriff's Department and was asked to come to the station for questioning. Because his van was not reliable, he had the manager of Tab's Lounge, Charles Case, drive him to the sheriff's office in New Sarpy. Defendant waived his right to have counsel present and answered all questions. He also consented to having his van towed from Tab's Lounge to *974 the sheriff's office and to its subsequent search.
Among the items found in the van were two spots of blood on the carpet; a large, half full container of gasoline; a Pepsi bottle containing gasoline; numerous tools of which, although none were positively determined to be the murder weapon, one, a crowbar, was the type of instrument which could have caused the death. At this point, there was no probable cause for arrest and defendant was released. Subsequently, a warrant was issued for defendant's arrest and he turned himself in. Again waiving his right to have an attorney present, defendant voluntarily made a statement.
We consider the defendant's assignments of error and arguments under the headings hereinafter indicated.

REFUSAL TO GRANT DEFENDANT A CONTINUANCE
Defendant argues the trial court committed prejudicial error in refusing to grant defendant a continuance because (1) the state failed to give defendant an opportunity to inspect the state's exhibits 1 through 8 (photographs) until the day of trial; (2) the defense was not prepared for trial as it had not as yet received a report from its only investigator; and (3) a material witness (Capes) was absent.
The trial court has discretion to grant a timely-filed motion for continuance in any case if there is good ground therefor. LSA-C.Cr.P. Art. 712. A denial of a motion for continuance is not grounds for reversal absent an abuse of discretion and a showing of specific prejudice. State v. Benoit, 440 So.2d 129 (La.1983); State v. Cathey, 500 So.2d 419 (La.1987), cert. denied, Cathey v. Louisiana, 481 U.S. 1049, 107 S.Ct. 2181, 95 L.Ed.2d 838 (1987).
These arguments were previously raised by defendant via writ No. 89-K-668. This Court denied writs finding no abuse of the trial court's discretion. A second review, as mandated by State v. Fontenot, 550 So.2d 179 (La.1989), again reveals no abuse of the trial court's discretion.
It was agreed by all that the state inadvertently failed to inform defendant of exhibits 1 through 8. However, as noted by the trial court, defendant was noticed of these exhibits through other discovery responses. Therefore, the state's failure to provide defendant an opportunity to inspect the evidence did not require the grant of defendant's motion to continue trial.
As to the contention defense had insufficient time to prepare for trial, we note the murder occurred May 28, 1988, and defendant was arrested March 31, 1989, indicted on May 4, 1989, and the trial commenced October 11, 1989, pursuant to a defendant-filed motion for a speedy trial. Although defendant argues an investigator's report was not complete, there is no evidence of record in support thereof. Further, defendant had provided counsel with names of potential witnesses and two people who could be contacted to locate the witnesses. Finally, the only witness (Capes) defense complained was not available did in fact testify.
Therefore, we find defendant failed to show a specific prejudice which would necessitate our finding an abuse of the trial court's discretion in denying a continuance.

EVIDENTIARY RULINGS
Defendant alleges the trial court erred in allowing the introduction of irrelevant, prejudicial and cumulative evidence, hearsay statements, and denying defense's motion to limit evidence of prior criminal acts.
Defense argues the court erred in denying its Motion in Limine to exclude evidence of other crimes committed by Burrow and others, primarily through alleged hearsay statements made by the victim to several people.
LSA-C.E. Article 404(B) provides, in part, as follows:
Other crimes, wrongs, or acts. (1) Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as *975 proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
Initially, it must be noted that at the hearing on the Motion in Limine, it was agreed by defendant that testimony concerning the victim's desire to inform the authorities of defendant's participation in stealing and reselling cigarettes would be admissible so long as the state did not use the words "theft ring." The state agreed. However, defendant reserved his right to object at trial. The only objection to evidence of other crimes made by defendant concerned the testimony of Harry Touchet, a Kenner policeman and friend of the victim. Touchet testified the victim contacted him approximately three weeks before her death to find out how to make a complaint against defendant concerning defendant's participation in stealing and reselling cigarettes. Defendant timely objected on hearsay grounds. The objection was overruled.
Evidence of other crimes is admissible to show motive, intent, plan, etc. LSA-C.E. Article 404(B). Although this evidence is still subject to hearsay rules, we find any error in allowing the introduction of this testimony was harmless. The defendant, in the Motion in Limine, agreed to allow the introduction of this evidence and to contesting the reason why the victim intended to inform the police. Further, the defendant testified that he was involved in stealing and reselling cigarettes. Therefore, we find if it was error to admit the evidence it was harmless and did not contribute to the verdict. Therefore, we should not and will not disturb the verdict. See State v. Walters, 523 So.2d 811 (La.1988).
Testimony concerning additional crimes allegedly committed by defendant was not objected to, barring defendant's right to now complain. See State v. Boutte, 384 So.2d 773 (La.1980).
Defendant also complains the trial court erred in allowing the introduction of irrelevant, prejudicial and cumulative evidence.
Outside the presence of the jury, the state and defendant argued the admissibility of the state's evidence. In reviewing the evidence, the trial court excluded certain pictures as cumulative or prejudicial, but allowed others to show wounds suffered by the victim, the location of the crime scene and its relation to the railroad trestle, as well as pictures of defendant's van and items in his possession. Additionally, defendant argues pictures of the victim's apartment, showing no indication a crime occurred there, were unduly prejudicial.
We disagree and find no error by the trial court. The trial judge reviewed the pictures and excluded a number of pictures she felt were cumulative or prejudicial in nature. Pictures of injuries to a victim are admissible to show the extent of the wounds and the cause of death. State v. Boudreaux, 526 So.2d 230 (5th Cir.1988), writ denied, 532 So.2d 176 (La.1988). Pictures of the crime scene are relevant to show steps in the police investigation and to tie in the scene with other evidence. The fact the state could not positively determine various items were used in the commission of the crime did not require their exclusion from evidence.
Pictures of the victim's apartment, while showing no evidence of foul play, did show a phone number for the Jefferson Parish District Attorney's Office, tending to prove the victim's intent to turn the defendant in for stealing. Any other relevance of these pictures would tend to exculpate defendant. We find no undue prejudice caused by these pictures. Hence, we cannot say that if it was error to admit them, that such error contributed to the verdict. Therefore, any error committed would be harmless. See State v. Walters, supra.
Defendant also complains the introduction of the victim's fingerprints and clothing were irrelevant. On the contrary, we find this evidence relevant to show who the victim was and how she was killed and/or burned.

*976 SUFFICIENCY OF THE EVIDENCE
The constitutional standard for testing the sufficiency of the evidence, enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. State v. Rosiere, 488 So.2d 965 (La.1986); State v. Davis, 540 So.2d 600 (5th Cir.1989). When circumstantial evidence is used to prove the commission of the offense, LSA-R.S. 15:438 mandates that, "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." The requirement of LSA-R.S. 15:438 does not establish a standard separate from the Jackson standard, but rather provides a helpful methodology for determining the existence of reasonable doubt. State v. Captville, 448 So.2d 676 (La.1984); State v. DiLosa, 529 So.2d 14 (5th Cir.1988), writ denied, 538 So.2d 1010 (La.1989). Ultimately, all evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. State v. Porretto, 468 So.2d 1142 (La.1985), dissenting opinion, 475 So.2d 314 (La.1985).
Defendant was convicted of second degree murder based solely on the presentation of circumstantial evidence. There was no direct evidence showing the defendant committed the crime. Second degree murder is defined by LSA-R.S. 14:30.1, in pertinent part, as follows:
"A. Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm; or
(2) When the offender is engaged in the perpetration or attempted perpetration of aggravated rape, forcible rape, aggravated arson, aggravated burglary, aggravated kidnapping, aggravated escape, armed robbery, first degree robbery, or simple robbery, even though he has no intent to kill or to inflict great bodily harm."
The state presented a scenario to the jury that the victim and defendant had a stormy romance over the years. Defendant was now involved in a cigarette stealing-resale scam where he made up to $500 per day. Hanna had decided to report defendant's activity to the police and told him so.
For approximately one month prior to her death, Hanna began expressing her fear of defendant to various persons. Three to four weeks prior to her death, she told Harry Touchet, a friend and Kenner policeman, that she was afraid of defendant and feared for her life. Two days prior to her death, on May 26, 1988, at 6:00 P.M., her daughter, Shirley Bell, came by Hanna's apartment to pick up her daughter. While there, Hanna told Shirley to leave because defendant was en route and she expected a big argument. Defendant arrived before Shirley left and she observed the beginning of an argument whereby Hanna cursed defendant, told him she was telling the authorities about his stealing and asked him to leave her alone.
The day before her killing, May 27, 1988, at 1:43 A.M., Hanna called the Kenner police about defendant. Sergeant John Smith answered the call and testified Hanna filed a complaint against defendant and seemed afraid of him.
Later that morning, at 3:30 A.M., Hanna called her employer, Richard Foreman, who testified that Hanna was very upset because defendant had been outside her apartment waving a gun at her. Later, at 6:00 A.M., she called her manager, Lisa Pinto, who testified Hanna said defendant had been harassing her and she feared him to such a degree that Hanna wanted to stay at her house that evening. That evening, Hanna was murdered.
Hanna's body was found May 28, 1988 at approximately 3:20 A.M. burning in the Bonnet Carre Spillway. The evidence indicated Hanna was killed by approximately eight blows to the head by a blunt object. Her body was then set on fire and left in the spillway.
*977 The evidence around the scene consisted of a semi-circular drag mark through the sand where the body was dragged out of the vehicle, around the front of the vehicle, and then down near the railroad trestle. The radius of the semi-circular portion of the drag marks coincides with the distance from the side door of defendant's van to the front of the vehicle. Other physical evidence gathered at the scene included a shoe print and tire tracks. Although there was no direct evidence to prove the tire tracks were from defendant's van or the shoe print from his shoes, defendant's van tracks and shoe prints were sufficiently similar to those of defendant for the jury to conclude from visual inspection that the tracks and shoe prints were made by the defendant.
Testing of the body and clothing indicated a gasoline residue on Hanna's shoe. A consent search of defendant's vehicle produced roughly, a four-gallon container of gasoline that was half empty and a Pepsi Cola bottle with gasoline in it. Further, a crowbar was found in the defendant's van that, although not conclusively determined to be the murder weapon, was the type instrument that could have caused Hanna's head injuries and death. Finally, human blood, though unable to be typed, was found in defendant's van.
Also, Rebecca Kenning testified the defendant told her he was going to kill the victim. This occurred shortly before the murder.
Given the lack of direct evidence which would (1) place defendant at the scene where the victim's body was found, (2) connect the small amount of blood found in the van to that of the victim, (3) tie the gasoline used in burning the victim's body to the gasoline found in the defendant's van, or (4) prove the crowbar found in defendant's van was the murder weapon, the question of whether the evidence presented by the state was sufficient to convict is a serious one. Moreover, when coupled with the testimony of defendant's witness to the effect that the defendant was in Tab's Lounge between the hours of 1:00 A.M. and 4:00 A.M. on the night of the murder and that at least two other persons had contact with the defendant and a motive to kill her, plausible arguments can and have been made that there is doubt as to defendant's guilt.
Nevertheless, eleven jurors were convinced the evidence proved defendant's guilt beyond a reasonable doubt. Our primary function is not to redetermine the defendant's guilt or innocence in accordance with our appreciation of the facts and credibility of the witnesses. Rather, our function is to review the evidence in the light most favorable to the prosecution and determine whether there is sufficient evidence to support the jury's conclusion.
Recognizing that the jurors, as the triers of the facts, had the discretion to accept or reject the testimony of the defendant's witness and apparently elected to reject it, a rational juror could, from the totality of the evidence submitted by the state, find that the defendant in fact committed the murder and intended the death of Ella Hanna.
Defendant argues the trial court erred in not granting a new trial on the same basis as the arguments set forth above. For the above reasons, we find the trial court properly denied this motion. As to the allegation of newly discovered evidence, about which defendant's argument in brief is silent, our review of the trial court record indicates this alleged newly discovered evidence was information that with reasonable diligence would have been discovered prior to trial. LSA-C.Cr.P. Art. 851. Therefore, this assignment is without merit.
Our review of the record for errors patent indicates the minute entry and transcript of sentencing fail to give defendant credit for time served. The trial court is ordered to amend the minute entry to reflect defendant being given credit for time served.
For the foregoing reasons, defendant's conviction and sentence for the second degree murder of Ella Hanna is affirmed.
AFFIRMED.
NOTES
[1] Other errors were assigned, not briefed, and therefore considered abandoned. Uniform RulesCourts of Appeal Rule 2-12.4.