JzGOTHARD, Judge.
On December 9,1993, the Jefferson Parish Grand Jury returned an indictment charging defendant, Michael Banford, and three other individuals, with first degree murder, in violation of LSA-R.S. 14:30. At the January 14, 1994 arraignment, the defendants pled not guilty.
On March 10,1994, the trial court conducted a pre-trial hearing on Banford’s Motion to Suppress Confession. After considering the evidence presented, the trial court denied the motion to suppress, finding that the state carried its burden of proving beyond a reasonable doubt that the defendant’s confession was freely and voluntarily given. At the hearing, the court also granted defendant’s motion to sever, enabling each defendant to be tried separately. On this date, the state orally amended the indictment to charge defendant with second degree murder, LSA-R.S. 14:30.1. This oral amendment was followed by a written amendment on March 22, 1994.
_JjThe matter proceeded to trial before a twelve person jury on March 22 and 23,1994. After considering the evidence presented, the jury unanimously found defendant guilty of second degree murder.
On April 15,1994, the trial court sentenced defendant to the mandatory term of life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. On the same date, defendant filed a Motion to Reconsider Sentence pursuant to LSA-C.Cr.P. art. 881.1, as well as a Motion for Appeal. On April 20, 1994, the trial court denied defendant’s Motion to Reconsider Sentence and granted defendant’s Motion for Appeal. For the following reasons, we affirm and remand.

FACTS

Detective Grey Thurman of the Jefferson Parish Sheriffs Office testified at trial that on September 23, 1993, at approximately 11:00 p.m., he was notified of a double murder and proceeded to the scene at 268 Senate Drive in Avondale. Upon his arrival, he directed the handling of the scene in his capacity as case officer.[1] Following his interviews with the witnesses, Detective Thurman focused his efforts on locating an individual by the name of Frank Smith, who was allegedly involved in the incident with three unknown black males.
On September 24, 1993, at approximately 12:45 p.m., Detective Thurman received a telephone call from the Jefferson Parish Correctional Center informing him that a gentleman by the name of Frank Smith was in the lobby and wanted to | ¿surrender in connection with a homicide. Detective Thurman proceeded to the Correctional Center, picked Frank Smith up, and brought him to the detective bureau. Once at the bureau, the officer advised Smith of his Miranda rights *673 and thereafter took several statements from him. Upon completion of these statements, the detective compiled a photographic lineup [2] which he showed to Smith. After showing the line-up to Smith, the detective obtained an arrest warrant for the defendant, Michael Banford.
On October 22,1993, defendant was arrested on the outstanding warrant. On that day, Detective Thurman proceeded to the New Orleans Police Department’s Fourth District Police Station to speak to defendant, who was in the custody of New Orleans Police Department Detective Kenneth Harris. Detective Thurman read defendant his rights and completed a Jefferson Parish Sheriffs Office rights of arrestee form. After indicating that he understood his rights, defendant signed a form indicating his desire to waive his rights. Detective Thurman then conducted a preliminary oral interview in an attempt to map out the direction of the formal statement.
During this preliminary interview, defendant told Detective Thurman that he had been in the company of Frank Smith and the other co-defendants, and that they had gone to Avondale earlier that day looking to pick up some guns. They returned to Harvey later that evening and went to an apartment with a man named Dwayne Parquet. They spoke there about robbing a drug dealer in the Avondale area. Frank Smith knew who the drug dealers were, and he would show the others who to rob by taking them there and tapping his brake lights. In this | .^preliminary interview, defendant told Detective Thurman that he did not shoot anyone in the incident, but that he was a participant in the robbery.
Detective Thurman then took a formal taped statement from defendant. Defendant stated that on September 23, 1993, Frank Smith, Mark Carey, and he were going job hunting. They left from defendant’s apartment in Frank Smith’s car. However, they did not go job hunting because they got stopped by the Jefferson Parish police. They eventually went to Dwayne Parquet’s[3] apartment at about 3:00 p.m. Mark, Frank, Dwayne, Matthew Haynes (Padoo), and defendant talked there about going to rob a dope dealer in the Kennedy Heights Subdivision. They travelled to the area and Frank, who was in his own car, tapped his vehicle’s brake lights as a signal to designate the intended victim of the robbery. When the car in which defendant was riding pulled up, Mark and Padoo, who both had pistols, exited the vehicle. The victims told Mark and Padoo that they did not have anything, but Mark started shooting, and then Padoo started shooting.
In his taped statement, defendant claimed that he stayed in the car during the whole incident. He said that when they left Dwayne’s apartment, he knew they were planning to rob a dope dealer, but that he did not go there to kill anybody.
At trial, Dr. Susan Garcia, a forensic pathologist with the Jefferson Parish Coroner’s Office, testified that on September 24, 1993, she performed an autopsy on the bodies of the victims, Gary Veal and Warren Broad-nax. In her capacity as an expert forensic pathologist, she testified that Mr. Veal suffered one ^penetrating gunshot wound to his right lower flank, which is right above the hip bone. The wound resulted in injury to Veal’s heart, liver and lung and caused Mr. Veal to bleed to death. The toxicology test that she performed on Veal revealed that at the time of death, he had in his system the break down product of cocaine, phencyclidine (commonly known as PCP), and a level of cannabanoids (the active ingredient of marijuana). However, the level of drugs in his system was not a contributing cause of his death.
Dr. Garcia’s autopsy of Mr. Broadnax revealed that he suffered seven entrance wounds to the body and one exit wound. However, the only lethal wound was the entrance wound to his right forehead which resulted in a penetrating injury to his brain. Dr. Garcia also testified that Mr. Broadnax *674 had wounds on the back of his right forearm that were consistent with defense wounds. The toxicology tests on Mr. Broadnax were negative for drugs or alcohol in his system at the time of his death.
Ms. Louise Walzer, employed by the Jefferson Parish Sheriffs Office Crime Lab, testified at trial as an expert in the field of firearms identification. Based on the projectiles and shell casings that she tested in this case, she concluded that two weapons were probably involved, a .25 caliber and a .380 caliber.
After the state rested its case, defendant testified on his own behalf. According to defendant, on September 23, 1993, at about noon, he was going job hunting with Frank and Mark. However, they got stopped by the police and lost the spirit of job hunting. He testified that while he was in the apartment where the armed robbery was planned, he played no part in planning the armed robbery and he did not want to participate in either the armed robbery or the killing. On 17cross-examination, defendant admitted that he had previously committed an armed robbery [4] and that when they left the apartment, he knew the plan was to go to Avondale to commit an armed robbery. Defendant further testified that he went with them, instead of going home, because he was scared and did not want to get his “head blown off by those two.”
After considering the evidence presented, the jury unanimously found defendant guilty of second degree murder.

DISCUSSION

Defendant’s first assignment of error is: The trial court erred in allowing into evidence impermissible hearsay testimony.
At trial, Detective Thurman testified that Frank Smith, an original co-defendant, surrendered himself in connection with the homicides. After taking several statements from Smith, Detective Thurman showed Smith a photographic line-up. Thurman was allowed to testify at trial that after showing Smith the photographic line-up, he obtained an arrest warrant for defendant, Michael Banford. Although Thurman did not testify about the result of the line-up, defendant claims that this testimony was inadmissible hearsay, because “the testimony of Thurman in this regard was nothing but a back door means of getting before the jury the hearsay statement of Smith that appellant was a participant in the homicide.”
In his brief, defendant admits that Detective Thurman did not actually tell the jury what Smith said; however, Thurman’s testimony caused the jury “to |8arrive at the unavoidable implication that an arrestee for the homicide, Smith, identified appellant as a participant in that homicide.” Defendant further asserts that because Smith was unavailable for cross-examination or confrontation, the “identification as a participant” implication was unshakable at trial. Thus, defendant urges such error in admitting the hearsay implication cannot be deemed harmless.
Hearsay is a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted. LSA-C.E. art. 801C; State v. Hearold, 603 So.2d 731 (La.1992). Hearsay is not admissible except as otherwise provided by the Code or other legislation. LSA-C.E. art. 802; State v. Balsar, 625 So.2d 664 (La. App. 5 Cir.1993), writ denied, 93-2799 (La. 1/13/94), 631 So.2d 1164.
In the present case, as admitted by the defense, Detective Thurman did not testify as to what Frank Smith said. Detective Thurman merely testified that after showing Smith a photographic line-up, he obtained an arrest warrant for defendant. After a review of the statutes and jurisprudence, we find that such testimony is not hearsay.
In State v. James, 555 So.2d 519 (La.App. 4 Cir.1989), writ denied, 559 So.2d 1374 (La. 1990), a detective testified at trial that he obtained a warrant for defendant’s arrest based on comments made by defendant’s sister. On appeal, defendant alleged that the trial court erred in allowing this testimony into evidence because it contained indirect hearsay. The Fourth Circuit found defen *675 dant’s argument to be meritless, stating as follows:
A review of Detective Winins testimony-shows he did not repeat the substance of any out of court statement made to him. He simply explained that he 1 interviewed April James and then went on to say what he did after the interview. No hearsay evidence was admitted. Winins merely explained the justification for the arrest of James. Had he not done so, the jury may have questioned his authority. The explanation in this case was entirely proper. Counsel’s argument is meritless.
State v. James, supra, at 522.[5]
In the matter before us, Detective Thurman’s testimony did not constitute hearsay since he did not repeat the substance of the out-of-court statement made to him. He merely testified as to what he did after he showed Smith a photographic line-up. Moreover, even if the testimony gave rise to a hearsay implication, the testimony was admissible because it was not offered to prove the truth of the matter asserted, but rather it was used to explain the officer’s actions leading to the arrest of defendant. Accordingly, this assignment is without merit.
Defendant’s second assignment of error is: The evidence was insufficient to support the conviction. By this assignment, defendant challenges the sufficiency of the evidence used to convict him.
In State v. Burrow, 565 So.2d 972 (La.App. 5 Cir.1990), writ denied, 572 So.2d 60 (La. 1991), this court set forth the standard for testing the sufficiency of the evidence as follows:
The constitutional standard for testing the sufficiency of the evidence, enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the | flight most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. State v. Rosiere, 488 So.2d 965 (La.1986); State v. Davis, 540 So.2d 600 ([La.App.] 5th Cir.1989). When circumstantial evidence is used to prove the commission of the offense, LSA-R.S. 15:438 mandates that, “assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” The requirement of LSA-R.S. 15:438 does not establish a standard separate from the Jackson standard, but rather provides a helpful methodology for determining the existence of reasonable doubt. State v. Captville, 448 So.2d 676 (La.1984); State v. DiLosa, 529 So.2d 14 ([La.App.] 5th Cir. 1988), writ denied, 538 So.2d 1010 (La.1989). Ultimately, all evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. State v. Porretto, 468 So.2d 1142 (La.1985), dissenting opinion, 475 So.2d 314 (La.1985).
State v. Burrow, supra at 976.
In the present case, defendant was convicted as a principal to second degree murder committed during the course of an armed robbery. The pertinent portion of the second degree murder statute, LSA-R.S. 14:30.1, reads as follows:
A. Second degree murder is the killing of a human being:
[[Image here]]
(2) When the offender is engaged in the perpetration or attempted perpetration of aggravated rape, forcible rape, aggravated arson, aggravated burglary, aggravated kidnapping, aggravated escape, drive-by shooting, armed robbery, first degree robbery, or simple robbery, even though he has no intent to kill or to inflict great bodily harm.
Furthermore, all persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the *676 act constituting the offense, aid or abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals. LSA-R.S. 14:24.
| nln the present case, the evidence linking defendant to the crime came from the testimony of Detective Thurman, as well as defendant’s confession and testimony. According to Detective Thurman, in defendant’s oral interview prior to the recorded statement, defendant told Detective Thurman that he did not shoot anyone in the incident, but that he was a participant in the robbery.
After the preliminary oral interview, defendant gave a formal recorded statement in which he tried to distance himself from both the shooting and the robbery. In defendant’s recorded statement, he admitted to being in the apartment when they were talking about a robbery, but claimed that he stayed in the car during the whole incident.
At trial, defendant testified that he had no part in the planning of the armed robbery and that he did not want to participate in either the armed robbery or the killing. He indicated that he went with the others because he was scared that they might kill him. Defendant admitted that when they left the apartment, he knew the plan was to rob a drug dealer.
Although there is a lack of direct evidence linking defendant to the murders, the jury chose to believe that from the evidence presented, defendant was a participant in the planning and perpetration of the armed robbery and thus was guilty of second degree murder.
In State v. Bennett, 454 So.2d 1165 (La. App. 1 Cir.1984), writ denied, 460 So.2d 604 (La.1984), the First Circuit found that because defendant was a principal and cocon-spirator with co-defendant Bell in the commission of the armed robbery, he was responsible for co-defendant Bell’s acts of killing the two victims during the perpetration of the robbery, and therefore was guilty of second degree murder. In that case, the evidence showed that a deputy and a store clerk h2were shot to death at a store, that defendant and another had discussed the robbery of the store and had driven to the store to accomplish it, that defendant started walking out of the store when he observed a deputy arrive, that defendant hid in the bushes near the store, that a number of shots were fired, and that defendant and the other person split the money obtained in the robbery. In concluding that this evidence was sufficient to sustain a finding that defendant was guilty as a principal to the armed robbery and thus was guilty of second degree murder, the First Circuit stated:
Viewing this evidence in the light most favorable to the prosecution reveals that Bell and Bennett discussed the robbery in Scotlandville and subsequently drove to the store to accomplish it. Bennett followed Bell into the store, and while Bell was robbing the clerk, Bennett stood by the books in the store. When Bennett saw the deputy drive up, he said “police” (apparently to warn Bell) and started walking out of the store. These actions by Bennett also apparently gave Bell sufficient time to successfully ambush the deputy. Although Bennett left the store, he did not leave its vicinity and subsequently drove away from the scene with Bell. Bennett and Bell split the money obtained in the robbery. This is more than sufficient evidence to support a jury factual determination that Bennett was guilty as a principal to the armed robbery by Bell. See, for example, State v. Hayes, 414 So.2d 717 (La.1982).
Although second degree murder may be committed when the offender has a specific intent to kill [La.R.S. 14:30.1(1) ], it may also be committed when the offender is engaged in the perpetration of armed robbery, even though he has no intent to kill or to inflict great bodily harm. [La.R.S. 14:30.1(2) ]. Thus, the evidence shows that Ritchie and Robique were killed during the course of an armed robbery, and Bennett is guilty of second degree murder even though he may not have had an intent to kill or inflict great bodily harm. Because Bennett was a principal (La.R.S. 14:24) and a coconspirator (La.R.S. 15:455) with Bell in the commission of the armed robbery, he was responsible for Bell’s acts of killing Ritchie and Robique during the | isperpetration of the robbery and is guilty *677 of the second degree murders of those men.
State v. Bennett, supra at 1184.[6]
An appellate court’s primary function is not to redetermine the defendant’s guilt or innocence in accordance with its appreciation of the facts and credibility of the witnesses. Rather, our function is to review the evidence in the light most favorable to the prosecution and determine whether there is sufficient evidence to support the jury’s conclusion. State v. Burrow, supra.
In the matter before us, the jury chose to believe the testimony which implicated defendant in the crime. Viewing the evidence in a light most favorable to the prosecution, a rational juror could conclude, from the totality of the evidence presented by the state, that defendant was a principal to the second degree murder of Gary Veal and Warren Broadnax. Accordingly, this assignment is without merit.
Defendant also assigned as error any and all errors patent on the face of the record. LSA-C.Cr.P. art. 920 provides: “the following matters and no others shall be considered on appeal: (1) An error designated in the assignments of error; and (2) An error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence.”
For the purpose of an error patent review, the “record” in a criminal case includes the caption, the time and place of holding court, the indictment or information and the endorsement thereon, the arraignment, the plea of the accused, the bill of particulars filed in connection with a short form indictment or | ^information, the mentioning of the impaneling of the jury, the minute entry reflecting sequestration in a capital case, the verdict, and the judgment or sentence. See State v. Oliveaux, 312 So.2d 337 (La.1975) and State v. Orgeron, 620 So.2d 312 (La.App. 5 Cir.1993).
An error patent review reveals that defendant was not given credit for time served as mandated by LSA-C.Cr.P. art. 880.[7] Accordingly, the trial court is hereby ordered to amend the minute entry and commitment to reflect defendant being given credit for time served. See State v. Burrow, supra.
Further, at the time of sentencing, the trial court did not inform defendant of the prescriptive period for post-conviction relief as is mandated by LSA-C.Cr.P. art. 930.8 C.[8] However, failure to so inform defendant does not constitute grounds for reversing the sentence or remanding the case for resen-tencing. LSA-C.Cr.P. art. 921. Rather, the trial court is hereby ordered to inform defendant of the provisions of LSA-C.Cr.P. art. 930.8 by sending appropriate written notice to defendant within 10 days of the rendition of this opinion and to file written proof that defendant received the notice in the record of the proceedings. See State v. Kershaw, 94-141 (La.App. 5 Cir. 9/14/94), 643 So.2d 1289 and State v. Procell, 626 So.2d 954 (La.App. 3 Cir.1993).
| isFor the foregoing reasons, we affirm defendant’s conviction and the sentence imposed, subject to defendant being given credit for time actually spent in custody, if any, prior to the imposition of his sentence. This case is remanded to the trial court for further action consistent with this opinion.
AFFIRMED; REMANDED

. Officer Kelly Carrigan of Ae Jefferson Parish Sheriff’s Office, employed as crime scene technician, testified at trial Aat on September 23, 1993, he was called to the crime scene. When he arrived at approximately 11:20 p.m., he picked up numerous spent shell casings, a crack pipe and a lighter. He also took photographs and assisted in taking measurements on Ae scene.

. Prior to the commencement of trial, the trial court denied defendant's Motion to Suppress the Photographic Identification.

. In the transcribed statement, Dwayne's last name is spelled "Parquette." The correct spelling of the name is not known.

. Defendant was convicted in that crime of a' reduced charge of simple robbery.

. See also State v. White, 495 So.2d 340 (La.App. 4 Cir.1986), writ denied, 498 So.2d 752 (La.1986); State v. Martin, 607 So.2d 775 (La.App. 1 Cir. 1992) and State v. Alexander, 487 So.2d 468 (La.App. 3 Cir.1986), where the Third Circuit concluded that a statement by a police officer, indicating that an accomplice had named defendant and another as his accomplices, was not hearsay where it was not used to show guilt, but to show how authorities connected defendant with the burglary.

. See also State v. Grant, 623 So.2d 204 (La.App. 2 Cir.1993), writ denied, 629 So.2d 400 (La.1993) and State v. Doyle, 525 So.2d 1090 (La.App. 3 Cir.1988), writ denied, 540 So.2d 326 (La.1989).

. LSA-C.Cr.P. art. 880 provides that "[t]he court, when it imposes sentence, shall give a defendant credit toward service of his sentence for time spent in actual custody prior to the imposition of sentence.”

.LSA-C.Cr.P. art. 930.8 C provides that "[a]t the time of sentencing, the trial court shall inform the defendant of the prescriptive period for post conviction relief.”