694 So.2d 1060 (1997)
STATE of Louisiana
v.
Robert P. GUCCIONE.
No. 96-KA-1049.
Court of Appeal of Louisiana, Fifth Circuit.
April 29, 1997.
*1062 Paul D. Connick, Jr., Terry M. Boudreaux, District Attorney's Office, Parish of Jefferson, Gretna, for Plaintiff/Appellee, State.
William R. Campbell, Louisiana Appellate Project, New Orleans, for Defendant/Appellant, Robert Guccione.
Before GAUDIN, BOWES and CANNELLA, JJ.
BOWES, Judge.
Defendant, Robert Guccione, appeals his conviction for two counts of attempted second degree murder (Counts one and three), two counts of armed robbery, (Counts two and five), and one count of second degree kidnaping (Count four).[1] We affirm for the following reasons.

*1063 FACTS

The five charged counts involve two separate incidents and two different victims.
On June 28, 1995, Todd Louque met and talked with a woman in a Jefferson Parish bar. When Louque began to leave around 9:30 p.m., the woman asked for a ride. While driving, Louque agreed to accompany her to an area known as the Harvey Locks. The couple arrived at the location, walked behind the flood wall on the levee and began kissing. A few minutes later two men attacked Louque and began fighting with him. One of the men and Louque rolled into the water and continued to struggle. The attacker held Louque's head under the water several times. Finally, the other perpetrator, who was holding a gun, told Louque to stop fighting or he would be killed. The men took Louque's wallet, his 1995 Camero automobile, keys, beeper and watch before they fled. Louque did not see the woman again after he was attacked. Subsequently, Louque was treated at a hospital for injuries he received in the attack and gave a statement to police.
A few hours later, at around 3:00 o'clock a.m., Jefferson Parish Sheriff Deputy Randall Fernandez stopped a vehicle driven by defendant. Fernandez noticed that defendant's clothes were wet, the front seat of the vehicle was wet and that wounds on his hands appeared fresh. Defendant said that he had hurt his knuckles fixing the vehicle. The two passengers in the vehicle were Lila Plaisance and Carlo DeSalvo. After the stop, defendant and the others were allowed to leave in the vehicle.
In the early morning hours of June 30, 1995, officers patrolling the Westbank area of Jefferson Parish investigated an abandoned and stripped vehicle which was discovered to be Louque's stolen automobile. The officers followed an oil trail from the vehicle to a nearby residence. The officers saw body parts of a silver vehicle in the backyard. After a search of the premises pursuant to a warrant, the officers found parts of Louque's stolen Camero and a license tag in the name of Todd Louque. The resident, Michael DiCharra, was arrested and gave a statement that he had stripped the vehicle.
Late in the evening of June 30, 1995, James Clair met a young woman at a Jefferson Parish lounge. She began talking with Clair and eventually he agreed to leave with her. They went to a residence the woman stated belonged to a friend, but could not enter because it was locked. After they returned to the bar, the woman used the telephone. A short time later the woman told Clair that her friend was now at home. As Clair left again with the woman and walked to his automobile in the lounge's parking lot, he was grabbed from behind by a man and forced into the trunk of his vehicle. Clair heard two men enter the vehicle, turn on the radio and drive away, but could not hear the men's conversation. After a while, the vehicle stopped and the trunk opened. One of the men taped Clair's hands and feet and closed the trunk again. Once again the men drove the vehicle and then stopped. The trunk was opened and Clair, who had located an aerosol can, sprayed the contents into the face of one of the men. He was removed from the trunk and beaten. The scenario of driving, stopping and removing Clair from the trunk for beatings continued four or five times. Over the course of the evening, Clair was struck between 25 and 50 times. Finally, the vehicle stopped and Clair was left in the trunk.
About eight hours later, Clair heard noises and began beating on the inside of the trunk. A man heard the sound, realized that a person was locked in the trunk and called authorities. Subsequently, Clair was taken to a hospital and treated for extensive injuries. During this incident, the men stole Clair's money and items from his vehicle.
At the trial, Louque testified that three or four days after the crime he made a tentative identification during a photographic lineup of defendant as the man who attacked him and held his head under water. He also testified about his positive identification without hesitation of defendant during a physical lineup about three weeks later.
*1064 During the first photographic lineup while he was hospitalized, Clair was not able to identity the attackers. He testified that the injuries and loss of blood prevented him from being able to do so. However, Clair also testified about his identification of defendant during a later physical lineup.
At trial, both Louque and Clair identified defendant as one of their attackers. As a result of the police investigation, Guccione and two others, Carlo DeSalvo and Lila Plaisance who were identified by Louque, were arrested for the incidents involving both victims.
Guccione was charged with the above crimes, was arraigned and pled not guilty. Subsequently, defendant filed a pro se motion for a preliminary examination and a motion to proceed pro se. The motion to proceed pro se was granted by the court. Later, on motion of the defendant, the court also ruled that defendant could receive the sum of $3,000.00 for a private investigator, have access to all witnesses other than co-defendants and have use of a telephone. Defendant filed a motion to quash and sever the counts, which was denied by the trial court.[2] In State v. Guccione, 96-K-198, decided March 3, 1996, this Court denied a writ as to this ruling.
On April 15, 1996, the trial began. Defendant represented himself and an attorney was appointed to serve as his legal advisor. At the conclusion of the trial, the jury returned the verdict of guilty as charged to Counts one, two, three and four and the responsive verdict of first degree robbery to Count five. Defendant's motion for a directed verdict of acquittal was denied. The trial court sentenced defendant as follows: on Counts one and three, the sentence was 50 years at hard labor on each count, with sentences to run consecutively; on Count two, defendant received 50 years at hard labor without benefit of parole, probation, and suspension of sentence, to run concurrent with each other count; on Count four, the sentence was 10 years at hard labor, also to run concurrent; and on Count five, defendant received 35 years at hard labor without benefit of parole, probation, or suspension of sentence, to run concurrent. Defendant was also given credit for time served on each count. A motion for appeal was granted and an attorney was appointed to represent defendant on appeal.

ASSIGNMENT OF ERROR NUMBER ONE
The trial court erred in granting defendant's motion to proceed in pro se at trial.
In this assignment of error, defendant contends that the trial court erred in granting the motion to proceed pro se. Specifically, he argues that the trial court failed to warn him of the dangers of self-representation, failed to advise him of the elements of the crimes and failed to advise him of the penalties of the charged offenses.
The trial court repeatedly questioned defendant during pre-trial proceedings to determine whether defendant was knowingly and intelligently waiving his right to counsel. The court inquired into the education of the defendant, who finished high school, and ascertained that defendant had no legal training. At the hearing on the first motion to proceed pro se, the court briefly changed its mind, deciding not to remove appointed counsel. At that point, defendant asked:
Am I lead counsel? I don't want him to be present. I don't want him to be able to speak for me since you've told me I'm, my own lawyer ... I don't want him to be at all the hearings.
The court then agreed to allow defendant to represent himself. At a subsequent hearing on a motion for habeas corpus filed by defendant, the court again questioned defendant about self-representation, and defendant again stated that he wanted to represent himself. The judge asked defendant if he knew what crimes he was charged with, and whether he knew the punishment for themdefendant answered affirmatively, stating the sentence and acknowledging that he would not be eligible for parole, probation, *1065 or suspension of sentence. The court decided to take the defendant's motions under advisement, and to determine whether he would appoint an attorney to assist Guccione.
At a later hearing on a motion to suppress, court appointed attorney Mitchell Gibbs (who had been involved in the case and had prepared pre-trial motions) appeared to assist defendant, answering legal questions to aid him. The court continued to offer to appoint an attorney to represent him at trial, which defendant adamantly and repeatedly opposed.
The Sixth Amendment to the United States Constitution gives the defendant in a criminal prosecution the right to represent himself. Because an accused managing his own defense relinquishes many of the traditional benefits associated with the right to counsel, he must knowingly and intelligently forego those benefits in order to represent himself. See Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); State v. Carpenter, 390 So.2d 1296 (La.1980); State v. Bond, 94-509 (La.App. 5 Cir. 1/31/95), 650 So.2d 354, 356. Although no minimum requirements have been established for judging the sufficiency of a waiver of counsel, there must be a reasonable inquiry to establish on the record a knowing and intelligent waiver under the overall circumstances. See State v. Strain, 585 So.2d 540 (La.1991); State v. Bond, supra.
The judge, in accepting a waiver of counsel at trial, should advise the accused of the nature of the charges and the penalty range, should inquire into the accused's age, education and mental condition, and should determine according to the totality of the circumstances whether the accused understands the significance of the waiver. See Von Moltke v. Gillies, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948). While the judge need not inquire into each and every factor stated in the Von Moltke plurality opinion in order to establish a valid waiver of the right to counsel at trial, there must be a sufficient inquiry (preferably by an interchange with the accused that elicits more than "yes" and "no" responses) to establish on the record a knowing and intelligent waiver under the overall circumstances. Whether an accused has knowingly and intelligently waived his right to counsel is a question which depends on the facts and circumstances of each case.
State v. Strain, supra
Further, the record must show that a defendant waived his right "with eyes open" and with an awareness of the danger of self-representation. See State v. Harper, 381 So.2d 468 (La.1980); State v. Bond, supra.
The trial court here clearly recognized that self-representation was not the best decision for the defendant, and that defendant did not have legal expertise. However, in this connection, the Second Circuit has held as follows:
It is clear throughout this state's jurisprudence that the adequacy of a defendant's self-representation and legal competence are not determinative of a valid waiver of counsel. The federal and state constitutions guarantee the right to self-representation, but make no qualifications or requirements concerning an accused's legal ability.

State v. Kennon, 588 So.2d 1348 (La.App. 2 Cir.1991)
We agree with this analysis.
Defendant's decision to represent himself was made knowingly and voluntarily. Although the trial judge warned defendant numerous times that he was concerned about his competency to represent himself, the judge also questioned defendant and found that he was literate, competent, and understood the charges. Moreover, the transcript indicates that defendant was more than adequate in his self-representation and particularly skillful in drafting motions and in conducting examinations of the witnesses.
Accordingly, for these reasons, this assignment of error has no merit.

ASSIGNMENT OF ERROR NUMBER TWO
The trial court erred in denying defendant's motions to appoint an investigator and allow more liberal access to the prison law library for four or five months after *1066 defendant's motion to proceed pro se was granted.
Defendant argues that the repeated denials of his request for an investigator and access to the law library prejudiced his right to counsel and his right to a fair trial. Specifically, he argues that the trial court's denial of an investigator during the pre-trial proceedings prevented him from finding and presenting alibi witnesses and affected the outcome of the trial. Additionally, he claims that he was denied access to legal materials to prepare during the pre-trial.
The Louisiana Supreme Court has recognized that the state should supply funds upon a showing by the defense that the indigent accused is unable to obtain existing evidence crucial to the accused. State v. Madison, 345 So.2d 485, 490 (La.1977); State v. Trahan, 481 So.2d 729 (La.App. 1 Cir.1985).
The record shows that on December 15, 1995, the trial court ordered that defendant be allowed two hours access per weekday to the prison law library. On January 11, 1996, the court reconsidered defendant's request for an investigator and allowed defendant $3,000.00 for an investigator, access to witnesses and use of the telephone. The trial in this matter began on April 16, 1996. Prior to trial, defendant neither argued that he needed more time to prepare nor filed a motion to continue.
Thus, the record shows that at least four months prior to trial, the court provided defendant with the trial support and library access he requested. Defendant has not supported his allegations that he could not prepare his defense or that his guilty verdict was based upon the delay in granting his requests. The record shows that defendant filed several pro-se pre-trial motions and was prepared each time for the hearings and trial.
This assignment of error is likewise without merit.

ASSIGNMENT OF ERROR NUMBER THREE
The trial court erred when it denied defendant's motion to sever offenses, and alternatively, to quash the indictment.
In this assignment of error defendant contends that he was prejudiced by the trial court's failure to sever the counts. Defendant contends that the prejudice occurred because he wanted to testify at trial only on one criminal incident, but could not since he would be cross-examined as to the other offenses.
Under the "law of the case" an appellate court will not, on subsequent appeal, reconsider prior rulings in the same case. The same issue was previously addressed by this Court when it denied defendant's writ application in 96-K-198 on March 3, 1996. In that writ action, this Court determined that the writ application disclosed no error in the trial court's ruling denying the motion to quash and sever. Thus, this Court should not reconsider this issue. Nevertheless, defendant's argument still lacks any merit. We held in State v. Schneider, 542 So.2d 620 (La.App. 5 Cir.1989) as follows:
In ruling on a motion to sever, the trial court should weigh the possibility of prejudice versus the important considerations of judicial economy and administration. State v. Washington, 386 So.2d 1368 (La. 1980); appeal after remand, 430 So.2d 641 (La.1983). Factors for the court to consider when determining whether the joinder of two or more offenses would result in prejudice include ... whether the jury would be confused by the various counts; whether the jury would be able to segregate the various charges and evidence; whether the defendant could be confounded in presenting his various defenses; whether the crimes charged would be used by the jury to infer a criminal disposition and finally, whether, especially considering the nature of the charges, the charging of several crimes would make the jury hostile.
* * * * * *
The defendant has a heavy burden of proof when alleging prejudicial joinder; he must make a clear showing of prejudice. State v. Machon, 410 So.2d 1065 (La.1982). A ruling on a motion to sever offenses is addressed to the sound discretion of the trial court and its ruling should not be *1067 disturbed absent a showing of abuse of that discretion. State v. Celestine, supra [452 So.2d 676 (La.1984)].
Defendant argues that he was "confounded in presenting his various defenses," as delineated above. This issue was addressed in State v. Feeback, 414 So.2d 1229 (La.1982), where the Louisiana Supreme Court held that a severance was not required simply because a defendant indicates that he wishes to testify on some counts but not on others. Likewise, in the instant case, the severance was not required simply because defendant wanted to testify as to one of the charges, but not as to the others. Therefore, the trial court did not abuse its discretion in denying defendant's motion to quash and sever the offenses. Defendant is not entitled to a severance under these circumstances and has demonstrated no prejudice as a result of the joinder.
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER FOUR
The evidence produced at trial was insufficient to support a conviction on the charge of attempted second degree murder of Todd Louque.
In this assignment, the defendant argues that there was no evidence of the required element of specific intent to kill for the conviction of attempted second degree murder. Specifically, he contends that "the only evidence of specific intent to kill revealed that there was a fight, that Louque was held under water, and that he was left, standing and conscious, at the conclusion of the incident." Defendant's brief appears to argue that because Louque was not killed by an attacker who had the strength to kill, was not shot by the offender possessing the handgun, and was left standing and conscious with only relatively minor physical injuries, the jury erred in finding defendant had the specific intent to kill.
The constitutional standard for testing the sufficiency of the evidence requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Rosiere, 488 So.2d 965 (La.1986); State v. Burrow, 565 So.2d 972, 976 (La.App. 5 Cir.1990), writ denied, 572 So.2d 60 (La.1991). When circumstantial evidence is used to prove the commission of the offense, La. R.S. 15:438 mandates that, "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." The requirement of La. R.S. 15:438 does not establish a standard separate from the Jackson standard, but rather provides a helpful methodology for determining the existence of reasonable doubt. State v. Captville, 448 So.2d 676 (La.1984); State v. Burrow, supra. Ultimately, all evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. State v. Burrow, supra.
Specific intent is defined as that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1). Specific intent is a state of mind and, as such, need not be proven as a fact but may be inferred from the circumstances and actions of the accused. State v. Graham, 420 So.2d 1126 (La.1982); State v. Bonck, 613 So.2d 1125 (La.App. 5 Cir.1993), writ denied, 620 So.2d 840 (La.1993).
The gravamen of the crime of attempted murder, whether first or second degree, is the specific intent to kill and the commission of an overt act tending toward the accomplishment of that goal. State v. Huizar, 414 So.2d 741 (La.1982); State v. Martin, 92-811 (La.App. 5 Cir. 5/31/94), 638 So.2d 411. The determination of whether the requisite intent is present in a criminal case is for the trier of fact, and a review of the correctness of this determination is to be guided by the Jackson standard, supra. State v. Martin, supra.
In the present case, the evidence revealed that defendant and another man attacked the *1068 victim after he was led to a secluded location under a false pretense. Louque was repeatedly struck, his head was held under water by defendant several times and he had to struggle to prevent from being drowned and killed. The other perpetrator, who was armed with a gun, interrupted the fight when he told the victim to stop fighting or he would be killed.
With these facts, the state proved beyond a reasonable doubt that defendant had the specific intent to kill and committed an overt act for the purpose of accomplishing that goal. The fact that the perpetrators did not actually kill the victim before they fled does not vitiate a finding of specific intent to kill.

ASSIGNMENT OF ERROR NUMBER FIVE
The defendant's conviction and sentence for attempted second degree murder and armed robbery violate the Constitutional protections against double jeopardy.
In assignment of error number five, the defendant contends that his convictions of attempted second degree murder and armed robbery of the victim, Todd Louque, constitute a violation of double jeopardy because proof of the armed robbery was used to convict defendant on the attempted second degree murder offense. This conclusion is based on the assertion, which we have determined (infra) to be in correct, that the state failed to prove specific intent to kill Louque.
The United States and Louisiana Constitutions provide that no person shall be twice put in jeopardy of life or liberty for the same offense. U.S. Const. Amend. V; La. Const. Art. I, § 15 (1974). Double jeopardy provisions protect an accused, not only from a second prosecution on the same offense, but also from multiple punishments for the same criminal conduct. State v. Vaughn, 431 So.2d 763 (La.1983).
It is well settled law that when proof of a felony, in this case attempted armed robbery, is an essential element of a first degree murder or an attempted first degree murder, double jeopardy precludes conviction and punishment of defendant for both murder (or attempted murder) and the underlying felony. State v. Holmes, 94-907 (La.App. 5 Cir. 3/15/95), 653 So.2d 642; State v. Head, 598 So.2d 1202 (La.App. 5 Cir.1992); State v. Stack, 95-213 (La.App. 5 Cir. 7/25/95), 659 So.2d 853.
In the case before us, although the actual intent of the jury cannot be discerned, the defendant's conviction of attempted second degree murder can be upheld if there is sufficient evidence to prove the specific intent to kill. There is no such crime as attempted "second degree felony murder." State v. Allen, 571 So.2d 758 (La.App. 2 Cir.1990). Rather, attempted second degree murder requires the specific intent to kill, and this is in consistent with the felony murder theory of La. R.S. 14:30.1 A(2). Thus the crime of attempted second degree murder cannot be based on an underlying felony.
Therefore because there is sufficient evidence to prove that defendant had the specific intent to kill (infra), and to support the conviction for attempted second degree murder, the defendant's convictions for that crime, and armed robbery, do not constitute a violation of double jeopardy.
Thus, for the above reasons, these assignments of error lack merit.

ERROR PATENT
We have reviewed the record for errors patent in accordance with State v. Oliveaux, 312 So.2d 337 (La.1975) and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990).
The transcript indicates that the trial judge failed to advise defendant of the time delay for filing for post-conviction relief, as is mandated by La.C.Cr.P. art. 930.8 C. Generally, a defendant must file his application for post-conviction relief within three years after his judgment of conviction. Section C provides that the trial judge shall inform defendant of this prescriptive period at the time of sentencing. However, the failure to inform the defendant is not a ground for vacating the sentence. Rather, the appropriate remedy is to remand the case with an instruction to the trial judge to inform defendant of the provisions of article 930.8 C by sending written notice to defendant *1069 within ten days after the rendition of this opinion and to file written proof in the record that defendant received such notice. State v. Crossley, 94-965 (La.App. 5 Cir. 3/15/95), 653 So.2d 631, 636-637, writ denied, 95-0959 (La.9/15/95), 660 So.2d 459; State v. Kershaw, 94-141 (La.App. 5 Cir. 9/14/94), 643 So.2d 1289.

DECREE
For the foregoing reasons, the conviction and sentence of the defendant are affirmed.
In addition, it is ordered that the trial judge inform defendant of the three year prescriptive period for filing for post-conviction relief of La.C.Cr.P. art. 930.8 by sending appropriate written notice to defendant within ten days of the rendition of this opinion and to file written proof that the defendant received the notice in the record of the proceedings.
AFFIRMED.
NOTES
[1] The bill of information jointly charged co-defendants, Lila Plaisance, in all the counts, and charged co-defendant, Carlo DeSalvo, in Counts one and two. However, defendant Guccione was tried separately. The record does not indicate the outcome of the proceedings against the co-defendants.
[2] Defendant filed other pre-trial motions but has not filed any assignments of error related to those motions or rulings.